The PEOPLE of the State of Colorado ex rel. Sylvester Lee GARRISON, Plaintiff-Appellant,

v.

Richard D. LAMM, Governor of the State of Colorado, Defendant-Appellee.

No. 79CA0960.

Colorado Court of Appeals, Div. I.

Sept. 4, 1980.

Rehearing Denied Oct. 2, 1980.

Certiorari Denied Dec. 22, 1980.

Thomas J. D. Reed, Denver, for plaintiff-appellant.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., J. Stephen Phillips, Asst. Atty. Gen., Denver, for defendant-appellee.

SMITH, Judge.

This action was initiated under C.R.C.P. 106(a)(2) seeking to compel Governor Rich-

ard Lamm to transmit to the General Assembly all documents relating to the actions taken by Lieutenant Governor George Brown, in his capacity as acting governor, relative to pardon proceedings brought on behalf of Sylvester Lee Garrison. The trial court entered a summary judgment in favor of the governor, and from this order appeal was taken. We affirm.

Although this case was brought in the name of the People of the State of Colorado, the party in interest was Garrison, and not the People. Therefore, the People should not have been named as a party C.R.C.P. 17(a). Nevertheless, we elect to address the issues raised, and will treat this matter as having been brought by Garrison in his own name.

On November 22, 1978, Governor Lamm was absent from Colorado. Pursuant to Colo.Const. Art. IV, § 13, Lieutenant Governor Brown became acting governor. On that date he signed an order which purported to give a full, free, and unconditional pardon to Garrison from his conviction for murder.

On November 28, 1978, after Governor Lamm had returned to Colorado, he rescinded the attempted pardon of Garrison and further ordered that no documents relative to the attempted pardon should be sent to the Colorado General Assembly. Subsequently, relying on Colo.Const. Art. IV, § 7, Garrison brought this action to compel the governor to transmit those documents to the General Assembly. Governor Lamm moved to dismiss or for summary judgment and supported the motion with affidavits.

I. *Summary Judgment Procedure*

■ Garrison first asserts that the trial court acted prematurely in granting summary judgment. We disagree.

Garrison asserts, in essence, that he implicitly had been granted time to submit affidavits in opposition to Governor Lamm's motion to dismiss or for summary judgment. Garrison informed the court that he was having difficulty contacting Lieutenant Governor Brown to procure affidavits from him, and Garrison requested time to procure the affidavits. The court did not rule on this request. Garrison asserts that he therefore presumed this request was granted.

Under C.R.C.P. 6(d), unless the court otherwise orders, affidavits in opposition to a motion may be served at a time not later than one day before the hearing on the motion. C.R.C.P. 56(f) states:

"Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained . . . ."

The rules of the Denver district court provide that no oral argument will be held on a motion *unless* a request for such argument is made. This means, in essence, that all motions will be determined *ex parte* unless a formal hearing is requested. Furthermore, the local rules require parties to submit affidavits at the same time any memorandum briefs are submitted to the court.

Garrison argues that the local rules make no provision for situations in which a party has difficulty obtaining appropriate affidavits. He concludes, therefore, that C.R.C.P. 56(f) should apply and that the court should refuse to rule upon the application for judgment or order a continuance to permit affidavits to be obtained.

In support of this position, he cites *Littlejohn v. Shell Oil Co.*, 483 F.2d 1140 (5th Cir. 1973), *cert. denied*, 414 U.S. 1116, 94 S.Ct. 849, 38 L.Ed.2d 743 (1973). In that case, plaintiff informed the court, in writing, that it would be impossible to establish the particular element of his case without discovery. Therefore, plaintiff argued that it would be inappropriate to grant summary judgment against him, based upon his failure to establish this element, until he had been given an opportunity to conduct discovery. The circuit court agreed, and held that because injustice would best be prevented by allowing this discovery, F.R. Civ.P. 56(f) was applicable.

We conclude that the facts in the case at bar are distinguishable from *Littlejohn, su-*

*pra.* Here, the motion to dismiss or for summary judgment was filed on March 20, 1979. On April 11, 1979, Garrison filed his brief in opposition to defendant's motion. No mention was thereafter made concerning progress on obtaining affidavits. No ruling was sought on Garrison's request for time to obtain such affidavits, and on June 21, 1979, two months later, counsel for Garrison moved for and was granted, permission to withdraw from the case. On July 17, 1979, the court *ex parte* granted Governor Lamm's motion for summary judgment.

Under these circumstances sufficient time elapsed between the filing of the motion and the ruling. The trial court could properly have ruled at any time without notice since no requests for arguments were made pursuant to the rules of the Denver district court. If Garrison felt it necessary to have postponed the ruling, he should have taken further steps pursuant to C.R. C.P. 56(f), and obtained a specified time during which to procure the necessary affidavits in opposition to the motion for summary judgment. Thus, the trial court did not err when it determined to rule on the motion *ex parte* at the time it did.

## II. *Correctness of Ruling*

■ An action compelling an officer to act will lie only when that officer fails to perform an official duty. *Sheeley v. Board of County Commissioners*, 137 Colo. 350, 325 P.2d 275 (1958). Conversely, then, where there is no duty to act, an action in the nature of mandamus pursuant to C.R.C.P. 106(a)(2) cannot be sustained.

Colo.Const. Art. IV, § 7, provides:

"The governor shall have power to grant ... pardons after conviction ... subject to such regulation as may be prescribed by law relative to the manner of applying for pardons, but he shall in every case where he may exercise this power, send to the General Assembly at its first session thereafter, a transcript of the petition, all proceedings, and the reason for his action."

Pursuant to this provision, the General Assembly enacted § 16–17–102, C.R.S.1973 (1978 Repl.Vol. 8) which provides, *inter alia*:

"After a conviction, all applications for commutation of sentence or pardon for crimes committed shall be accompanied by a certificate of the respective superintendent of the State Penitentiary, showing the conduct of an applicant during his confinement in the State Penitentiary, together with such evidences of former good character as the applicant may be able to produce. Before the governor approves such application, it shall first be submitted to the sentencing judge, if available, and to the prosecuting district attorney, if available, for such comment as they may deem proper concerning the merits of the application, so as to provide the governor with information upon which to base his action ...."

■ One basis of Governor Lamm's motion to dismiss the action, or to grant summary judgment, was that the conditions precedent to the granting of a pardon required by § 16–17–102, C.R.S.1973 (1978 Repl.Vol. 8) had not been met. This motion was supported by several affidavits. One affiant, retired District Judge Joe Rawlinson, Jr., averred that he had been the presiding judge in the murder trial of Garrison. He averred that he had not been contacted by anyone from the executive branch concerning clemency for Garrison. Similarly, Judge James D. Urso, who was the prosecuting deputy district attorney in the Garrison trial, declared in his affidavit that he had not been contacted concerning executive clemency for Garrison. Further, David Greenberg, Esq., by affidavit stated that he was aware of no application from Garrison, or on behalf of Garrison, for a pardon, and in his capacity as assistant for legal affairs to Governor Lamm, his responsibilities included preparing and reviewing all such applications for a pardon. Finally, Olivia Remienes, by affidavit, stated that she was secretary for the Clemency Advisory Board during November 1978, and further stated that, although the files in her office contained a two-year-old application for commutation of sentence by Garrison, they contained *no* application for a pardon filed by Garrison.

In light of these uncontradicted affidavits, we conclude that Garrison presented no material issue of fact. The affidavits submitted conclusively established the fact that the purported pardon was not issued in compliance with the procedures required by § 16–17–102, C.R.S.1973, (1978 Repl.Vol. 8). Accordingly, because the statute was not complied with, the purported pardon was invalid. Thus, because of the invalidity of the pardon, the governor was under no obligation to send to the General Assembly a transcript of the petition and the proceedings with respect thereto. Therefore, Garrison was entitled to no relief pursuant to C.R.C.P. 106(a)(2). *Sheeley, supra.* For this reason, summary judgment in favor of Governor Lamm was proper.

The judgment is affirmed.

COYTE and VAN CISE, JJ., concur.