**HAMON CONTRACTORS, INC.,**
**Plaintiff–Appellant,**

**v.**

**CARTER & BURGESS, INC., d/b/a Carter and Burgess, Inc., and Craig Kitzman, Defendants–Appellees.**

Nos. 07CA0987, 07CA0988, 07CA2342.

Colorado Court of Appeals,
Div. VII.

April 30, 2009.

As Modified on Denial of Rehearing
June 11, 2009.

Certiorari Dismissed Aug. 14, 2009.

---

The Witt Law Firm, Jesse Howard Witt, Denver, Colorado, for Plaintiff–Appellant.

Hall & Evans, L.L.C., Benton J. Barton, Brian Molzahn, Denver, Colorado, for Defendant–Appellee Carter & Burgess, Inc.

Cross & Liechty, P.C., Robert M. Liechty, Denver, Colorado, for Defendant–Appellee Craig Kitzman.

Opinion by Judge J. JONES.

This case involves a dispute over a public works project. Plaintiff, Hamon Contractors, Inc. (Hamon), the general contractor for the project, sued the City of Louisville; Carter and Burgess, Inc. (C & B), the project administrator; and Craig Kitzman, the Assistant City Engineer. Hamon's claims against C & B and Mr. Kitzman were based solely in tort. As relevant to this appeal, the district court granted summary judgment in C & B's favor on all of Hamon's tort claims against it, granted summary judgment in Mr. Kitzman's favor on certain of Hamon's tort claims against him, and dismissed Hamon's remaining tort claims against Mr. Kitzman for lack of subject matter jurisdiction. Thereafter, the court awarded attorney fees and costs to both C & B and Mr. Kitzman.

With exceptions noted below, Hamon appeals the summary judgments and the order dismissing claims against Mr. Kitzman for lack of subject matter jurisdiction, as well as the orders awarding attorney fees and costs to C & B and Mr. Kitzman. We affirm the judgments and the order of dismissal. We affirm the orders awarding attorney fees and costs in part, vacate those orders in part, and remand for further proceedings.

## I. Background

In September 2003, the City began soliciting bids from private companies to act as the general contractor on a project which, as relevant here, called for the installation of a large pipe or culvert below a street to allow water to flow from west of the street onto a property east of the street. Mr. Kitzman reviewed and approved contract documents and specifications included in the bid package provided to the prospective bidders. These contract documents included plans prepared

by the design engineer, Wilson & Company, which is not a party in this case.

Hamon submitted a bid on October 14, 2003. The City selected Hamon as the general contractor on November 4, 2003. The City and Hamon executed a contract on November 10, 2003. The contract incorporated by reference numerous other documents, including the contract documents and specifications which had been included in the bid package.

On October 30, 2003, C & B submitted a proposal to the City to provide construction management and administration services for the project. The City and C & B entered into a contract on November 24, 2003, which included a scope of work encompassing, as relevant here, observing and evaluating the quality of the work and determining whether the work complied with the contract documents; issuing the City's instructions to Hamon; recommending allowance or disallowance of change orders; and determining the amount owing to Hamon on a periodic basis.

Hamon began work on the project in December 2003. Beginning in May 2004, Hamon experienced delays in construction caused by excessive water on the site. According to Hamon, the site did not drain properly, the soil at the site became oversaturated, and as result, Hamon was required to take steps to stabilize the soil. Hamon submitted a change order for this stabilization work to C & B. C & B, apparently acting on the City's behalf, largely denied the request for additional payment on the basis that Hamon could have taken ordinary and reasonably foreseeable temporary drainage measures to prevent the oversaturation. The City and C & B subsequently notified Hamon that, pursuant to the contract documents, the City would assess liquidated damages against Hamon for its failure to meet certain construction deadlines. The City ultimately withheld approximately $413,000 in liquidated damages.

In April 2005, Hamon sent a letter to the City Manager stating its position that there was no basis for assessing delay damages because all causes of delays were beyond Hamon's ability to control. With respect to the drainage problem specifically, Hamon asserted that in January 2004, Mr. Kitzman had been made "aware that the design for drainage was defective," but had failed to communicate that information to Hamon. Hamon further asserted that "[t]he City's failure to disclose this information constitutes fraud," for which, Hamon indicated, it would seek "all appropriate relief." Hamon also asserted that Mr. Kitzman was "put on notice" of other drainage problems in February 2004. Hamon concluded by demanding $667,925.34 for economic losses attributable to delays, disruptions, and additional work described in change orders.

In May 2005, Hamon sent another letter to the City indicating that its damages had increased to $765,867. Hamon accused the City and Mr. Kitzman of "depriv[ing] [Hamon] of its earnings" by misrepresentations and concealment that "appear to have occurred throughout the project."

Hamon commenced this action in October 2005 by filing a complaint asserting claims against the City, C & B, and Mr. Kitzman. Hamon filed an amended complaint in May 2006. Therein, Hamon asserted a breach of contract claim against the City, alleging that the delays were not Hamon's fault, the City had therefore wrongfully withheld liquidated delay damages under the contract, and the City had failed to compensate Hamon for additional work attributable to delays, disruptions, and design changes. The amended complaint also asserted various tort claims against the parties, as follows:

1. *Fraudulent concealment against the City, C & B, and Mr. Kitzman.*

As to the City and Mr. Kitzman, Hamon alleged that they were aware, both before and after Hamon entered into the contract with the City, "that the drainage design for the Project ... was inadequate to handle water flow," but concealed that information from Hamon. Hamon alleged that had it known the drainage design was inadequate, it would not have entered into the contract, and that the City and Mr. Kitzman concealed the information so that Hamon would not know the "true cause" of the drainage problem and they could therefore deprive Hamon of "mo-

nies owed" by falsely claiming that Hamon was at fault for the inadequate drainage.

As to C & B, Hamon made essentially the same allegations, but did not allege that C & B was actually aware of the drainage design flaws until March 2004, after Hamon had entered into the contract with the City.

### 2. Fraudulent misrepresentation against the City, C & B, and Mr. Kitzman.

This claim largely repeated the allegations of the fraudulent concealment claim, with the twist that the defendants allegedly told Hamon that weather and "improper grading" were the causes of the delays, but knew that the drainage design flaws actually caused the delays. Hamon alleged that the defendants made each of the misrepresentations after Hamon entered into its contract with the City.

### 3. Negligence against C & B and Mr. Kitzman.

Hamon alleged that C & B negligently failed to detect the drainage design flaws before either of them contracted with the City, and that C & B owed Hamon a duty to detect those problems and inform it of them during the bidding process. Hamon alleged that Mr. Kitzman negligently failed to detect the design deficiencies both before and after Hamon entered into its contract with the City.

### 4. Negligent misrepresentation against the City, C & B, and Mr. Kitzman.

This claim was based on the same factual allegations as those supporting the fraud claims, but alleged that the representations concerning the cause of the drainage problem (and the resulting delays) were merely negligent.

C & B moved for summary judgment. The court granted that motion, concluding that C & B owed no pre-contractual duty to Hamon as a matter of law, and that Hamon's

post-contractual claims were barred by the economic loss rule. On the latter point, the court reasoned that the post-contractual duties alleged by Hamon were encompassed within the implied covenant of good faith and fair dealing in C & B's contract and the standard of care expressly created by that contract, and therefore did not exist independently of that contract.

Mr. Kitzman also moved for summary judgment on Hamon's post-contractual claims.[1] The court granted the motion, concluding that those claims were barred by the economic loss rule because the duties Mr. Kitzman allegedly breached were "encompassed within the contract." The court later dismissed Hamon's pre-contractual claims against Mr. Kitzman pursuant to C.R.C.P. 12(b)(1) for lack of subject matter jurisdiction on the basis that Hamon had not given timely written notice of such claims as required by the Colorado Governmental Immunity Act (CGIA), §§ 24–10–101 to –120, C.R.S.2008. See § 24–10–109.

C & B and Mr. Kitzman each moved for an award of attorney fees and costs under section 13–17–102, C.R.S.2008, claiming that Hamon's claims against them lacked substantial justification. Mr. Kitzman also moved for an award of attorney fees and costs under section 13–17–201, C.R.S.2008, on the basis that the claims against him had been dismissed pursuant to C.R.C.P. 12(b). The court granted those motions, though it limited Mr. Kitzman's recovery of attorney fees and costs pertaining to post-contractual claims to the grounds set forth in section 13–17–102 because the court had granted summary judgment on those claims.

On appeal, Hamon challenges (1) the district court's summary judgment in C & B's favor on its claims for pre-contractual negligence and post-contractual fraudulent concealment and fraudulent misrepresentation, (2) the district court's summary judgment in Mr. Kitzman's favor on its post-contractual

---

1. Mr. Kitzman couched his motion as one to dismiss for failure to state a claim under C.R.C.P. 12(b)(5). However, he submitted materials in support of that motion that were not attached to or referred to in the amended complaint, and Hamon submitted such materials in opposing Mr. Kitzman's motion. The district court therefore treated the motion as one for summary judgment. See C.R.C.P. 12(b); *Walker v. Van Laningham*, 148 P.3d 391, 396–98 (Colo.App. 2006); *McGee v. Hardina*, 140 P.3d 165, 166 (Colo.App.2005).

fraud claims, (3) the district court's order dismissing its pre-contractual claims against Mr. Kitzman for lack of subject matter jurisdiction, and (4) the district court's orders awarding attorney fees and costs to C & B and Mr. Kitzman. Hamon does not appeal the district court's summary judgment on its negligent misrepresentation claim against C & B or the court's summary judgment on its post-contractual negligence and negligent misrepresentation claims against Mr. Kitzman.[2]

## II. Application of the Economic Loss Rule to Hamon's Post–Contractual Fraud Claims

As noted, the district court ruled that Hamon's claims for fraudulent concealment and fraudulent misrepresentation based on post-contractual conduct were barred by the economic loss rule. Hamon contends that, in so ruling, the district court erred because: (1) claims for post-contractual fraud are not subject to the economic loss rule as a matter of law because the duty not to commit fraud necessarily exists independently of contractual duties; (2) applying the economic loss rule to claims for intentional torts such as fraud is contrary to public policy; (3) the implied covenant of good faith and fair dealing is not the type of contractual duty which can subsume a fraud claim; and (4) even assuming the economic loss rule can be applied to fraud claims, the district court's analysis of whether C & B or Mr. Kitzman owed it a duty independent of the contracts was incomplete.

We summarize our conclusions as to each of these contentions as follows.

1. The economic loss rule can apply to fraud or other intentional tort claims based on post-contractual conduct. The question in any case where the economic loss rule is alleged to apply is whether the duty allegedly violated exists independently of the contract. With respect to fraud claims specifically, this depends on whether the alleged fraud arises from duties implicated by a party's performance of contractual terms or whether the

alleged fraud concerns a matter extrinsic to the contract. Where the alleged fraud arises from duties implicated by a party's performance of contractual terms, the claim is barred by the economic loss rule.

2. Applying the economic loss rule to claims for post-contractual fraud does not contravene public policy where the alleged fraud relates to the performance of the contract. Contrary to Hamon's contention, the parties to a contract can allocate the risk of intentional concealment or misrepresentation in the performance of a contract.

3. Because the implied covenant of good faith and fair dealing prohibits fraud in the performance of contractual obligations as to which one party has discretionary authority, the covenant may preclude a fraud claim arising out of the party's performance of contractual terms. Here, that implied duty applied to the decisions regarding change orders and delay damages, which lie at the heart of Hamon's post-contractual fraud claims.

■ 4. We perceive no error in the district court's ultimate determination that Hamon failed to establish a genuine issue of material fact as to the existence of an independent duty of either C & B or Mr. Kitzman. After considering all factors relevant to that determination, we conclude that the duty Hamon alleged—to provide truthful information about the cause of the drainage problem—clearly arises out of the parties' interrelated contracts. Specifically, Hamon failed to demonstrate a duty independent of (1) the implied covenant of good faith and fair dealing in the parties' interrelated contracts; (2) the City's implied warranty of the adequacy of the plans and specifications; and (3) C & B's duty of care memorialized in its contract with the City. At most, Hamon alleged only fraudulent breaches of contractual duties.

We discuss Hamon's contentions in greater detail below.

---

2. In the course of the proceedings, the district court dismissed the tort claims against the City, but allowed the breach of contract claim to go forward. This appeal does not concern directly any of the district court's rulings as they pertain to claims against the City.

## A. Standard of Review

In granting summary judgment for C & B and Mr. Kitzman on Hamon's post-contractual fraud claims, the district court was guided by the following well-established principles.

Summary judgment is proper if the pleadings and supporting documentation show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 71 (Colo. 2004); *Western Innovations, Inc. v. Sonitrol Corp.*, 187 P.3d 1155, 1158 (Colo.App.2008). "A material fact is one that will affect the outcome of the case." *Western Innovations*, 187 P.3d at 1158 (citing *Struble v. Am. Family Ins. Co.*, 172 P.3d 950, 955 (Colo.App. 2007)). "Once the movant shows the absence of a genuine issue of material fact, the burden shifts to the nonmovant to show that a dispute exists concerning a material fact." *Id.* (citing *Camus v. State Farm Mut. Auto. Ins. Co.*, 151 P.3d 678, 680 (Colo.App.2006)).

■ We review a district court's decision granting summary judgment de novo, applying the same principles that guided its determination whether summary judgment was proper. *Western Innovations*, 187 P.3d at 1158; *Nelson v. Gas Research Institute*, 121 P.3d 340, 343 (Colo.App.2005).

Here, the district court decided the motions based on the pleadings and the documentation submitted in connection therewith. The facts on which the court based its rulings on these claims do not appear to have been in dispute. Essentially, the court ruled as a matter of law that the economic loss rule bars Hamon's post-contractual fraud claims. Hamon's arguments on appeal pertaining to those rulings raise only issues of law. We review such issues de novo. *Klinger v. Adams County Sch. Dist. No. 50*, 130 P.3d 1027, 1031 (Colo.2006); *Akin v. Four Corners Encampment*, 179 P.3d 139, 143 (Colo.App. 2007); *see Rhino Fund, LLLP v. Hutchins*, 215 P.3d 1186, 1193 (Colo.App.2008) (whether a duty of care exists independently of any contractual duty is a question of law).

## B. The Economic Loss Rule

■ "[A] party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1264 (Colo.2000); *accord A.C. Excavating v. Yacht Club II Homeowners Ass'n, Inc.*, 114 P.3d 862, 865 (Colo.2005). This rule, commonly referred to as the economic loss rule, has been adopted in Colorado to serve three main policy interests:

> (1) to maintain a distinction between contract and tort law; (2) to enforce expectancy interests of the parties so that they can reliably allocate risks and costs during their bargaining; and (3) to encourage the parties to build the cost considerations into the contract because they will not be able to recover economic damages in tort.

*BRW*, 99 P.3d at 72; *see Town of Alma*, 10 P.3d at 1262.

■ "The key to determining the availability of a contract or tort action lies in determining the source of the duty that forms the basis of the action." *Town of Alma*, 10 P.3d at 1262. "A breach of a duty which arises under the provisions of a contract between the parties must be redressed under contract, and a tort action will not lie. A breach of a duty *arising independently* of any contract duties between the parties, however, may support a tort action." *Id.* (quoting *Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc.*, 320 S.C. 49, 463 S.E.2d 85, 88 (1995)) (emphasis in *Town of Alma*); *see also A.C. Excavating*, 114 P.3d at 865 ("In distinguishing between a tort obligation and a contract obligation, it is essential to discern the source of the party's duty.").

■ In determining whether the duty allegedly breached in a given case is independent of the parties' contract, a court must be mindful of the distinct sources of contract and tort obligations. "Contract obligations arise from promises the parties have made to each other, while tort obligations generally arise from duties imposed by law to protect citizens from risk of physical harm or dam-

age to their personal property." *BRW*, 99 P.3d at 72; *accord Town of Alma*, 10 P.3d at 1262.

### C. Application of the Rule to Post–Contractual Fraud

Hamon contends initially that a claim for fraud in the performance of a contract necessarily is based on a duty independent of the contract. In support of that contention, Hamon relies, at the outset, on the court's observation in *Town of Alma* that certain types of cases are outside the scope of the rule and its citation for this proposition of two cases that involved fraud claims, *Brody v. Bock*, 897 P.2d 769 (Colo.1995), and *Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41 (Tex.1998). *See Town of Alma*, 10 P.3d at 1263 & n. 10.

Hamon reads *Town of Alma* too broadly. The court in that case did not draw any bright lines among types of torts (e.g., fraud, negligence) that are always barred by the economic loss rule, those that may be barred, and those that are never barred. Rather, the court merely pointed by way of example to cases which, under their particular facts, involved independent tort duties. With respect to fraud specifically, the two cases cited by the court, *Brody* and *Formosa Plastics*, did not involve claims of fraud in the performance of a contract. *Brody*, 897 P.2d at 772, 776 (alleged fraudulent misrepresentations also allegedly *created* a contractual obligation); *Formosa Plastics*, 960 S.W.2d at 43–44, 46 (alleged fraud in the *inducement* of a contract). The court did not articulate any sweeping principle exempting post-contractual fraud claims from the ambit of the economic loss rule. Rather, the court emphasized, as it has in other cases, that the source of the duty allegedly breached controls. *Town of Alma*, 10 P.3d at 1262; *accord A.C. Excavating*, 114 P.3d at 865; *BRW*, 99 P.3d at 72; *Grynberg v. Agri Tech, Inc.*, 10 P.3d 1267, 1269 (Colo.2000); *see also United States Fire Ins. Co. v. Sonitrol Management Corp.*, 192 P.3d 543, 547 (Colo.App.2008).

Divisions of this court have applied the economic loss rule to post-contractual intentional tort claims where it was determined that the duties allegedly breached were not independent of the contracts at issue. *See, e.g., Parr v. Triple L & J Corp.*, 107 P.3d 1104, 1107–08 (Colo.App.2004) (claims for intentional interference with prospective business advantage based on a landlord's wrongful withholding of consent to an assignment of a lease were barred where the landlord had a duty under the lease not to unreasonably withhold consent); *Carder, Inc. v. Cash*, 97 P.3d 174, 183–84 (Colo.App.2003) (conversion claim against landlord barred); *Logixx Automation, Inc. v. Lawrence Michels Family Trust*, 56 P.3d 1224, 1230–31 (Colo.App. 2002) (civil conspiracy claim barred). Conversely, divisions of this court have allowed post-contractual intentional tort claims where the duties allegedly breached were independent of the contracts at issue. *See Rhino Fund*, 215 P.3d at 1194 (civil theft and conversion claims arising out of fund owner's conduct were not barred); *Colorado Homes, Ltd. v. Loerch–Wilson*, 43 P.3d 718, 721–22 (Colo.App.2001) (breach of fiduciary duty claim against homeowners association not barred because of special relationship between association and owners).

From among these cases, Hamon relies most heavily on *Rhino Fund*, contending that the division in that case held that intentional torts are outside the scope of the economic loss rule. *Rhino Fund*, however, is clearly distinguishable. There, an investor asserted tort claims against the owner of an investment fund arising out of the owner's diversion of money from the fund for his personal benefit. The division held that the tort claims for civil theft and conversion were not barred by the economic loss rule specifically because (1) the investor's contract with the fund did not address the investor's remedies in the event of a diversion of money; (2) the owner had an independent duty not to convert the money in the fund; and (3) the owner's "conversion and theft were based on acts independent of the contractual breach...." 215 P.3d at 1195.

In *Rhino Fund* and the other cases cited above, the divisions focused, consistent with Colorado law, on the sources of the duties allegedly breached, not on whether the torts at issue concerned pre– or post-contractual conduct or intentional or merely negligent

conduct. Thus, those cases do not support the bright line rule urged by Hamon.

Though Hamon urges that fraud is so pernicious that it necessarily arises from a duty independent of a contract, we perceive no such principle in our case law. Courts in other jurisdictions have effectively rejected this contention, holding that claims of fraud relating to the performance of a contract are barred by the economic loss rule. *See, e.g., Werwinski v. Ford Motor Co.*, 286 F.3d 661, 670–80 (3d Cir.2002) (applying Pennsylvania law); *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F.Supp.2d 557, 562–65 (D.N.J.2002) (applying New Jersey law); *Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.*, 209 Mich.App. 365, 532 N.W.2d 541, 544–46 (1995).

The only case Hamon cites which even arguably supports its position that fraud in the performance of a contract is necessarily actionable is *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal.4th 979, 22 Cal.Rptr.3d 352, 102 P.3d 268 (2004). In *Robinson,* the defendant agreed to supply parts to the plaintiff, a helicopter manufacturer, and issued certificates to the plaintiff falsely stating that the parts complied with federal requirements. By providing nonconforming parts, the supplier "exposed [the manufacturer] to liability for personal damages if a helicopter crashed...." *Id.* 22 Cal.Rptr.3d 352, 102 P.3d at 274. Though the California Supreme Court appeared to accept, at least generally, the proposition that intentional torts such as fraud are beyond the reach of the economic loss rule, the court expressly limited its holding that claims for fraud in the performance of a contract are actionable to circumstances where the tortfeasor's conduct exposes the victim to "personal damages independent of the [victim's] economic loss." *Id.* 22 Cal.Rptr.3d 352, 102 P.3d at 276.

We question whether the rationale employed by the California Supreme Court in *Robinson* is consistent with Colorado law. Nevertheless, we conclude that the limitation the court placed on its holding renders the case of little assistance to Hamon. Hamon alleged only economic losses resulting from C & B's and Mr. Kitzman's wrongful disapproval of change orders and imposition of delay damages, matters clearly within the scope of the parties' interrelated contracts. *See Town of Alma,* 10 P.3d at 1264 (defining "economic loss" for purposes of the economic loss rule as "damages other than physical harm to persons or property"). Hamon has not alleged that C & B's or Mr. Kitzman's actions exposed it to the type of personal liability to third parties at issue in *Robinson.*

Nor are we persuaded by Hamon's argument that applying the economic loss rule to claims of fraud in the performance of a contract would contravene public policy because the parties to a contract cannot account for the risk of such fraud in their bargaining. The undisputed facts of this case belie that contention, for at least three reasons: (1) the implied covenant of good faith and fair dealing limited C & B's discretion in considering change orders and determining whether to impose delay damages; (2) the City impliedly warranted the adequacy of the drainage design; and (3) C & B's contract with the City set forth its duty of care.

The parties here bargained for a process in which C & B would recommend to the City whether to approve change orders. The parties likewise bargained for certain construction deadlines and for the imposition of delay damages for Hamon's unexcused failure to meet those deadlines, as determined by the City based on consultation with C & B. C & B necessarily possessed some discretion in determining whether work that Hamon claimed was outside the scope of work it had agreed to perform was indeed outside that scope, and in determining the causes of delays in construction. The implied covenant of good faith and fair dealing, which, under Colorado law, is implied in every contract, *see Cary v. United of Omaha Life Ins. Co.,* 68 P.3d 462, 466 (Colo.2003); *Amoco Oil Co. v. Ervin,* 908 P.2d 493, 498 (Colo.1995), limited that discretion. *Amoco Oil Co.,* 908 P.2d at 498 (the duty of good faith applies "when the manner of performance under a specific contract term allows for discretion on the part of either party"). It certainly precluded C & B and Mr. Kitzman from denying a change order for a reason they knew to be false and from attributing delays to Hamon when they knew the drainage design flaws

actually caused the delays. *See City of Golden v. Parker*, 138 P.3d 285, 292 (Colo.2006) (duty of good faith effectuates the parties' intentions and honors their reasonable expectations); *Amoco Oil Co.*, 908 P.2d at 498 (same); *see also* Restatement (Second) of Contracts § 205 cmt. a (1979) (obligation of good faith excludes a variety of types of conduct characterized as "bad faith"); *id.* cmt. d ("Subterfuges and evasions violate the obligation of good faith in performance....").

We reject Hamon's contention that the implied covenant of good faith and fair dealing cannot, as a matter of law, subsume a claim of fraud in the performance of a contract. In *Town of Alma*, the court specifically held that implied contractual duties will defeat a tort claim unless the duty allegedly breached is independent of such duties. *Town of Alma*, 10 P.3d at 1264. Although, as Hamon points out, the Texas Supreme Court in *Formosa Plastics* apparently allowed claims for both fraud and breach of the implied covenant of good faith and fair dealing, the fraud claim there, as noted above, was based on pre-contractual representations. Therefore, in that case the duty allegedly breached by virtue of the alleged misrepresentations was independent of the contract. *See Town of Alma*, 10 P.3d at 1263 & n. 10.

The interrelated contracts also accounted for the risk of fraud associated with design defects because, as the project's owner, the City impliedly warranted the adequacy of the plans and specifications. *BRW*, 99 P.3d at 73. Hamon therefore had a construction law remedy in contract against the City for economic loss due to faulty plans and specifications. *Id.* As Hamon alleged in its amended complaint, faulty plans and specifications relating to drainage are the foundation for its claims.

It is also significant that C & B's contract with the City set forth C & B's duty of care. Section 9.0 provided: "Contractor's professional services shall be in accordance with the prevailing standard of practice normally exercised in the performance of professional services of a similar nature in the Denver metropolitan area." Such a duty would presumably preclude the type of concealment and misrepresentation Hamon alleges here, and the articulation of such a duty in the contract further demonstrates the parties' ability to allocate the risk of such conduct in their bargaining. *See id.* at 68, 74 (where contract required project engineer to perform its work "in accordance with the standards of care, skill and diligence provided by competent professionals who perform work or services of a similar nature," claim that engineer owed a professional duty to exercise reasonable care did not rest on a duty independent of the contract).

Finally, contrary to Hamon's contention, we do not perceive that the district court's analysis of whether Hamon established a genuine factual issue as to the existence of independent duties was incomplete and, for that reason, erroneous. The district court recited the relevant legal principles and focused on the source of the duties allegedly breached. Our de novo consideration of the factors relevant to determining whether Hamon established a genuine factual issue as to the existence of independent duties leads us to conclude that it did not.

Our supreme court has identified three factors that aid in determining whether the duty allegedly breached is independent of the parties' contract: (1) whether the relief sought in tort is the same as the contractual relief; (2) whether there is a recognized common law duty of care; and (3) whether the tort duty differs in any way from the contractual duty. *See BRW*, 99 P.3d at 74 (citing *Grynberg*, 10 P.3d at 1269–70); *see also Town of Alma*, 10 P.3d at 1262–63 (observing that while examining the type of damages suffered may assist in determining the source of the duty, the focus must be on the source of the duty alleged to have been violated).

■ As to the first factor, it is apparent that Hamon alleged only economic losses. Hamon's pre-litigation letters, pleadings, and other filings in this litigation alleged damages equal to the amount sought by change orders and the liquidated damages withheld by the City.

In responding to Mr. Kitzman's motion for summary judgment, Hamon submitted an affidavit of its president also alleging that C & B's and Mr. Kitzman's actions caused it to "suffer[ ] substantial damages to its relationships with subcontractors and damage to other business endeavors" because Hamon was unable to pay subcontractors. Hamon contends that, as a matter of law, it could not recover these damages in a contract action against the City. Hamon's argument is unconvincing.

These alleged damages clearly constitute economic losses in the nature of consequential damages. Whether Hamon could recover such damages in a contract action against the City would depend on whether they were foreseeable damages within the contemplation of the contracting parties when they entered into their contract. *See Giampapa v. Am. Family Mut. Ins. Co.*, 64 P.3d 230, 237 n. 3 (Colo.2003); *Vanderbeek v. Vernon Corp.*, 50 P.3d 866, 870 (Colo.2002); *cf. Denny Constr., Inc. v. City & County of Denver*, 199 P.3d 742 (Colo.2009) (in action against city, contractor could recover lost profits attributable to jobs on which it could not bid allegedly resulting from loss of bonding capacity which, in turn, resulted from city's breach of contract). Thus, any impediment to Hamon's recovery of these damages in an action against the City would result from a failure of proof, not from the nature of the action.

With respect to the second factor, we conclude that although, as Hamon contends, there is a common law duty to refrain from deliberate concealment or misrepresentation of material facts, any such duty existed here as to the information at issue only because of the parties' interrelated contracts. Hamon expressly alleged that the concealment and misrepresentation occurred in the context of applications of contractual remedies, specifically those pertaining to change orders and delay damages. These remedies were implicated only because of disputes concerning contractual provisions establishing the scope of the work and construction deadlines.

Lastly, it is clear that the tort duty alleged by Hamon does not differ in any way from the contract duty. As discussed, C & B and Mr. Kitzman each had a contractual duty to consider change orders and the causes of delays in good faith. That is precisely what Hamon alleges that C & B and Mr. Kitzman did not do. Likewise, C & B had an express contractual obligation to perform its services in accordance with the prevailing standard of practice. Again, Hamon alleges C & B failed to do so. And, as noted, the City impliedly warranted the adequacy of the plans and specifications. Hamon's allegations here expressly stem from the premise that the plans and specifications were not adequate.

Our conclusion that Hamon failed to demonstrate a genuine issue of material fact as to the existence of independent duties is reinforced by decisions in other cases involving disputes between parties to construction contracts.

In *BRW*, a subcontractor brought suit against the engineering firm that created the plans and specifications and the company retained to inspect the work. The subcontractor asserted claims for negligence and negligent misrepresentation, arising in part from post-contractual conduct, specifically, contract administration and on-site inspections. The subcontractor alleged that the engineering firm and the inspector had thereby caused delays and increased costs to the subcontractor. *BRW*, 99 P.3d at 67, 69–70.

The court held first that the contracts between the various parties involved in the project must be considered as a whole, and that "the economic loss rule applies when the claimant seeks to remedy only an economic loss that arises from interrelated contracts." *Id.* at 72. It also held that the subcontractor had not shown an independent duty because, as in this case, (1) the owner impliedly warranted the adequacy of the plans and specifications, and (2) the interrelated contracts memorialized duties of care owed by the engineering firm and the inspector. *Id.* at 73–74; *see also id.* at 75; *Town of Alma*, 10 P.3d at 1264 (where contract set forth contractor's duty of care, the plaintiffs failed to demonstrate a breach of an independent duty).

Similarly, in *Scott Co. of Calif. v. MK–Ferguson Co.*, 832 P.2d 1000 (Colo.App.1991), *overruled on other grounds by Lewis v. Lewis*, 189 P.3d 1134 (Colo.2008), a subcontractor on a construction project sued the general contractor, alleging that the general contractor had caused changes in the work after construction began, and that the general contractor had (1) negligently misrepresented that the subcontractor would be compensated for the changes, and (2) made negligent misrepresentations in changing the drawings. *Id.* at 1002–03. A division of this court held that the subcontractor's tort claims were barred by the economic loss rule because it had alleged only negligent breaches of contractual duties. *Id.* at 1003, 1005; *see also Berschauer/Phillips Constr. Co. v. Seattle School Dist. No. 1*, 124 Wash.2d 816, 881 P.2d 986, 989–93 (1994) (applying economic loss rule to construction contractor's claim that inspector's negligence in failing to competently inspect structural steel work increased construction costs).

Though both *BRW* and *Scott Co.* involved claims of negligence and negligent misrepresentation rather than claims of fraud, for the reasons discussed above, we do not perceive that distinction as making any difference in the application of the economic loss rule. Simply put, whether a party negligently breaches a contractual duty or fraudulently does so, the duty allegedly breached is not independent of the contract.

Therefore, we conclude that the district court did not err in granting summary judgment in favor of C & B and Mr. Kitzman on Hamon's post-contractual claims for fraudulent concealment and fraudulent misrepresentation.

### III. C & B's Alleged Pre-Contractual Duty

The district court held that C & B was entitled to summary judgment on Hamon's pre-contractual negligence and negligent misrepresentation claims because those claims essentially alleged nonfeasance by C & B, and in the absence of a special relationship between Hamon and C & B, which Hamon had not alleged, C & B had no duty as a matter of law to inform Hamon during the bidding process of flaws in the drainage design. On appeal, Hamon contends that the district court erred in granting summary judgment on the negligence claim because: (1) it demonstrated that C & B committed misfeasance, not merely nonfeasance; and (2) it established a genuine issue of material fact as to a reviewing engineer's duty to discover and inform bidding parties of problems with a project's design. We reject both contentions.

### A. Standard of Review

The determination whether one party owes a legal duty to another is a question of law that we review de novo. *Cary*, 68 P.3d at 465; *Western Innovations*, 187 P.3d at 1158; *see Univ. of Denver v. Whitlock*, 744 P.2d 54, 57 (Colo.1987). Because the district court decided this question on a motion for summary judgment, we apply the governing summary judgment principles noted above.

### B. Misfeasance or Nonfeasance

" 'In determining whether a defendant owes a duty to a particular plaintiff, the law distinguishes between acting and failure to act, that is, misfeasance, which is active misconduct that injures others, and nonfeasance, which is a failure to take positive steps to protect others from harm.' " *Western Innovations*, 187 P.3d at 1159 (quoting *Smit v. Anderson*, 72 P.3d 369, 372 (Colo.App.2002)); *accord Univ. of Denver*, 744 P.2d at 57. Where the alleged tortfeasor's action constitutes mere nonfeasance, the alleged tortfeasor has a duty to take affirmative action for another's aid or benefit only "where there is a 'special relationship' between the actor and the injured party or the actor committed itself to the performance of an undertaking, gratuitously or by contract, under the circumstances described in sections 323, 324, or 324A of the Restatement (Second) of Torts." *Western Innovations*, 187 P.3d at 1159–60 (citing *Univ. of Denver*, 744 P.2d at 58 n. 3, and *Smit*, 72 P.3d at 372).

Here, Hamon does not contend that there are any facts, disputed or not, which would establish a special relationship or oth-

er basis for imposition of a duty if C & B's pre-contractual conduct constituted mere nonfeasance. Rather, it contends that C & B's conduct constituted misfeasance. We are not persuaded.

" 'The reason for the distinction [between misfeasance and nonfeasance] may be said to lie in the fact that by "misfeasance" the defendant has created a new risk of harm to the plaintiff, while by "nonfeasance" he has at least made his situation no worse, and has merely failed to benefit him by interfering in his affairs.' " *Univ. of Denver*, 744 P.2d at 57 (quoting W. Keeton et al., *Prosser and Keeton on the Law of Torts* § 56, at 373 (5th ed.1984)); *accord Western Innovations*, 187 P.3d at 1159. Thus, an actor is guilty of misfeasance when it acts affirmatively to create or increase a risk to another. *See Univ. of Denver*, 744 P.2d at 57; *Smit*, 72 P.3d at 372; Restatement (Second) of Torts § 314 cmt. c (1965).

C & B did not create or increase a risk of harm to Hamon by any affirmative act. C & B did not prepare the design plans or specifications, nor did it revise or seek to revise them in any way relating to the drainage design flaws alleged by Hamon.

Hamon argues, however, that by telling the City in a letter dated October 30, 2003 that "[o]ther than a few minor issues, we believe that the drawings and specifications will be adequate to successfully complete the project," C & B increased the risk of harm by placing its imprimatur on the project. This argument does not withstand scrutiny.

In the letter, C & B noted that it had not been "involved in the planning and design phases of the project," but that based on its review of the drawings and specifications it had "a good understanding of what will be expected and what will be involved in constructing this project." Read in context, therefore, the statement on which Hamon relies was not an expression of approval of the design itself. Rather, C & B was indicating that it believed it could provide contract administration services without additional drawings and specifications. Further, the drainage design had already received the "imprimatur" of a professional engineer, namely, Wilson & Company, the design engineer for the project.

In effect, Hamon alleged that C & B "had it in its power to take reasonable action to eliminate the peril," *Univ. of Denver*, 744 P.2d at 59 n. 4, but did not do so. That is mere nonfeasance.

### C. Expert's Affidavit

In opposing C & B's motion for summary judgment, Hamon presented an affidavit from a professional engineer who opined that it was "essential to good engineering practice and ethics" for a "reviewing engineer" to assess the "adequacy of drainage plans for a highway project" and communicate any problems therewith to the design engineer, the owner, and any bidding parties. Hamon contends that this affidavit was sufficient to create a genuine issue of material fact as to whether C & B owed it a pre-contractual duty of care. We disagree with this contention for several reasons.

First, as discussed above, because C & B's alleged misconduct amounted to mere nonfeasance, to establish a basis for liability Hamon was required to present facts showing either a special relationship or C & B's commitment to perform an undertaking in the limited circumstances described in certain sections of the Restatement (Second) of Torts. The engineer's affidavit does not do so, and Hamon does not argue the contrary.

Second, the engineer's affidavit does not indicate that it is based on any review of the facts of this case. Indeed, it assumes, contrary to the facts of this case, a hypothetical "reviewing engineer" who had a contractual relationship with the owner to act as such at the time of the review. Here, however, at the time of C & B's initial review of the contract drawings and specifications, it was no more than a potential bidder itself. Moreover, it was not contemplating bidding to be a "reviewing engineer."

Third, an opinion as to "good engineering practice and ethics" does not necessarily establish an industry-wide duty of care. *See State Bd. of Dental Examiners v. Savelle*, 90 Colo. 177, 185, 8 P.2d 693, 696 (1932) (distinguishing between a violation of

professional ethics and a breach of a legal duty); *cf. Olsen & Brown v. City of Englewood*, 889 P.2d 673, 676 (Colo.1995) (attorney ethics rules "are not designed to alter civil liability nor do they serve as a basis for such liability"); *Michael v. Huffman Oil Co., Inc.*, 661 S.E.2d 1, 5–8 (N.C.Ct.App.2008) (code of ethics was improper basis for determining professional engineer's standard of care); *Dukes v. Philip Johnson/Alan Ritchie Architects, P.C.*, 252 S.W.3d 586, 592–94 (Tex.App. 2008) (professional code of ethics could not be considered in determining architect's duty of care), *cert. denied*, —— U.S. ——, 129 S.Ct. 1032, 173 L.Ed.2d 294 (2009). The expert cites no other basis for such a duty in his affidavit.

The existence of a duty of care must be determined by assessing the following factors: (1) the risk involved; (2) the foreseeability and likelihood of injury as weighed against the social utility of the defendant's conduct; (3) the magnitude of the burden in guarding against the injury; and (4) the consequences of placing the burden on the defendant. *Taco Bell, Inc. v. Lannon*, 744 P.2d 43, 46 (Colo.1987); *Smith v. City & County of Denver*, 726 P.2d 1125, 1127 (Colo.1986). Hamon makes no effort on appeal, and made no effort in the district court, to demonstrate that a consideration of these factors favors imposing a pre-contractual duty of care on C & B.

In sum, we conclude that Hamon failed to establish, through its expert's affidavit or otherwise, a genuine issue of material fact as to whether C & B owed it a pre-contractual duty. Therefore, the district court did not err in granting summary judgment in C & B's favor on Hamon's claim for pre-contractual negligence.

### IV. Opportunity to Conduct Discovery

In the alternative, Hamon contends that the district court erred in granting summary judgment in favor of C & B and Mr. Kitzman without giving it an opportunity to conduct discovery. We conclude that Hamon waived this contention.

Hamon filed its original complaint on October 6, 2005. The district court entered its orders granting the motions for summary judgment on August 30, 2006, and April 10, 2007. Early in the case, Hamon asked to be allowed to conduct limited discovery only as to matters relevant to the City's and Mr. Kitzman's motions to dismiss under the CGIA. The court allowed that discovery.

In responding to the motions for summary judgment, Hamon did not assert that it needed to conduct additional discovery before it could adequately respond to the motions. Had it desired to do so, Hamon would have been required to submit an affidavit in compliance with C.R.C.P. 56(f), which provides that the court may permit discovery prior to ruling on a motion for summary judgment where the nonmoving party submits an affidavit showing that due to a lack of discovery it cannot present facts essential to justify its opposition to the motion. Hamon did not submit such an affidavit. Therefore, it waived any argument that the district court prematurely granted the motions for summary judgment before providing it an opportunity for additional discovery. *See People ex rel. Garrison v. Lamm*, 622 P.2d 87, 88–89 (Colo.App.1980); *see also Cacevic v. City of Hazel Park*, 226 F.3d 483, 488–89 (6th Cir. 2000); *Dreiling v. Peugeot Motors of Am., Inc.*, 850 F.2d 1373, 1376–77 (10th Cir.1988); *see generally* 11 James Wm. Moore et al., *Moore's Federal Practice* § 56.10[8][b] (3d ed.2008).

### V. Notice Under the CGIA

The district court dismissed Hamon's precontractual negligence and negligent misrepresentation claims against Mr. Kitzman because it concluded that Hamon had not provided Mr. Kitzman with timely written notice of such claims in compliance with section 24–10–109 of the CGIA. On appeal, Hamon contends that the district court erred because its letters to the City in April and May of 2005 gave Mr. Kitzman adequate statutorily-required notice of these claims. We disagree with Hamon's contention.

Section 24–10–109 provides that a person claiming to have suffered an injury from the acts of a public employee must file a written notice within 180 days of the date the injury is discovered. As relevant here, the

notice must contain "[a] concise statement of the factual basis of the claim, including the date, time, place, and circumstances of the act, omission, or event complained of," and "[a] concise statement of the nature and the extent of the injury claimed to have been suffered ...." § 24–10–109(1), (2)(b), (d). Providing this notice is a jurisdictional prerequisite to maintaining a suit against a public employee alleged to have been acting in the course of his employment. *See* § 24–10–109(6); *City & County of Denver v. Crandall,* 161 P.3d 627, 632, 634 (Colo.2007); *Barham v. Scalia,* 928 P.2d 1381, 1384 (Colo.App. 1996).

■ The plaintiff has the relatively lenient burden of demonstrating that it complied with the notice requirements of section 24–10–109. *Tidwell v. City & County of Denver,* 83 P.3d 75, 85–86 (Colo.2003); *Awad v. Breeze,* 129 P.3d 1039, 1042 (Colo.App. 2005). The plaintiff must demonstrate strict compliance with the time requirement of the notice, but only substantial compliance with the content requirements. *Crandall,* 161 P.3d at 632 n. 5; *East Lakewood Sanitation Dist. v. Dist. Court,* 842 P.2d 233, 235–36 (Colo.1992).

■ Whether a plaintiff has satisfied the CGIA notice requirements is a mixed question of law and fact. *Crandall,* 161 P.3d at 633. We review the district court's factual findings for clear error and its legal conclusions de novo. *Id.* (citing *Mesa County Valley School Dist. No. 51 v. Kelsey,* 8 P.3d 1200, 1204, 1206 (Colo.2000)). Though the district court conducted a governmental immunity hearing pursuant to *Trinity Broadcasting of Denver, Inc. v. City of Westminster,* 848 P.2d 916 (Colo.1993), it based its dismissal of Hamon's pre-contractual negligence claims against Mr. Kitzman entirely on the April and May 2005 letters. Therefore, the issue here is one of law. *Crandall,* 161 P.3d at 633; *Springer v. City & County of Denver,* 13 P.3d 794, 798–99 (Colo.2000).

We conclude that the letters of April and May 2005 did not satisfy the content requirements of section 24–10–109(2). Neither letter refers to any act of Mr. Kitzman predating Hamon's contract with the City that relates to inadequate drainage at the site.

Indeed, the April 2005 letter expressly alleges that Mr. Kitzman became aware of the problems with the drainage design in January 2004, two months after Hamon entered into its contract with the City. Though the April 2005 letter refers to problems regarding utility lines of which the City was allegedly aware in 2003, those problems do not pertain to "the circumstances of the act [or] omission" about which the allegations in Hamon's first amended complaint relate, namely, the inadequate drainage design. And though the April 2005 letter notes that in a January 29, 2004 drainage report Mr. Kitzman "had expressed concerns about pipe capacities," it does not assert that Mr. Kitzman did so before Hamon entered into its contract with the City. Moreover, the letters allege no injury arising from acts or omissions relating to the inadequate drainage design predating Hamon's contract with the City.

Therefore, the district court did not err in dismissing the pre-contractual claims against Mr. Kitzman for lack of subject matter jurisdiction.

## VI. Attorney Fees and Costs in the District Court

The district court awarded attorney fees and costs to C & B under section 13–17–102, concluding that Hamon's claims against it were groundless and vexatious. The court awarded attorney fees and costs to Mr. Kitzman on all claims because they were frivolous, groundless, and vexatious. It also awarded attorney fees and costs to Mr. Kitzman on the pre-contractual claims because it had dismissed those claims pursuant to C.R.C.P. 12(b)(1). *See* § 13–17–201 (attorney fees shall be awarded to a defendant who prevails in a tort action on a motion brought pursuant to C.R.C.P. 12(b)).

■ Hamon contends that the district court erred in awarding attorney fees and costs because (1) an award under section 13–17–201 is not allowed where, as here, fewer than all claims against a party are dismissed pursuant to C.R.C.P. 12(b); and (2) none of its claims was substantially frivolous, substantially groundless, or substantially vexa-

tious. We agree with the first contention, and agree in part with the second contention.

## A. Attorney Fees and Costs Under Section 13–17–201

Section 13–17–201 provides in pertinent part that

[i]n all actions brought as a result of ... an injury to person or property occasioned by the tort of any other person, where any such action is dismissed on motion of the defendant prior to trial under rule 12(b) ..., such defendant shall have judgment for his reasonable attorney fees in defending the action.

Divisions of this court have consistently held that this provision permits an award of attorney fees only where an entire tort action, and not merely part of a tort action, is dismissed under C.R.C.P. 12(b). *See, e.g., Dubray v. Intertribal Bison Co-op.*, 192 P.3d 604, 606–07 (Colo.App.2008); *U.S. Fax Law Center, Inc. v. T2 Technologies, Inc.*, 183 P.3d 642, 648–49 (Colo.App.2007) (collecting cases); *see also State v. Golden's Concrete Co.*, 962 P.2d 919, 925 (Colo.1998) (dictum). That did not occur here: the district court dismissed only two of Hamon's four tort claims against Mr. Kitzman under C.R.C.P. 12(b). Therefore, we vacate the award of attorney fees to him under section 13–17–201.

## B. Attorney Fees and Costs Under Section 13–17–102

Section 13–17–102 provides, in pertinent part, that the court may award attorney fees against a party who "brought ... a civil action, either in whole or in part, that the court determines lacked substantial justification." § 13–17–102(2); *see also* § 13–17–102(4). The term " 'lacked substantial justification' means substantially frivolous, substantially groundless, or substantially vexatious." § 13–17–102(4).

### 1. Standard of Review

■ The determination whether a claim is substantially frivolous, substantially groundless, or substantially vexatious is within the district court's discretion. *City of Aurora v. Colo. State Engineer*, 105 P.3d 595, 618 (Colo.2005); *Front Range Home Enhancements, Inc. v. Stowell*, 172 P.3d 973, 976 (Colo.App.2007); *Wheeler v. T.L. Roofing, Inc.*, 74 P.3d 499, 504–05 (Colo.App. 2003). Therefore, we will not overturn such a determination if it is supported by the evidence. *City of Aurora*, 105 P.3d at 618; *Front Range Home Enhancements*, 172 P.3d at 976; *Wheeler*, 74 P.3d at 505.

### 2. Substantially Frivolous

■ A claim is frivolous "if the proponent can present no rational argument based on the evidence or law in support of that claim ...." *Western United Realty, Inc. v. Isaacs*, 679 P.2d 1063, 1069 (Colo.1984); *accord City of Aurora*, 105 P.3d at 620. A claim is not frivolous, however, if it is meritorious but merely unsuccessful; if it is a legitimate effort to establish a new theory of law; or if it is a good faith effort to extend, modify, or reverse existing law. *Western United Realty*, 679 P.2d at 1069; *Wheeler*, 74 P.3d at 505.

The district court found that all of Hamon's claims against Mr. Kitzman were substantially frivolous because Hamon had not "articulated a theory to explain why the City or Kitzman would hire a contractor [Hamon] to complete a design when [they] knew the design would fail." We agree with Hamon, however, that skepticism about Mr. Kitzman's alleged intent does not support a finding that Hamon's claims against him were substantially frivolous.

■ To prevail on its fraud claims against Mr. Kitzman, Hamon was not required to prove why Mr. Kitzman fraudulently concealed or misrepresented the true cause of the drainage problem. *Ackmann v. Merchants Mortgage & Trust Corp.*, 645 P.2d 7, 13 (Colo.1982) (setting forth the elements of fraudulent concealment); *Morrison v. Goodspeed*, 100 Colo. 470, 477–78, 68 P.2d 458, 462 (1937) (setting forth the elements of fraud). Likewise, Hamon was not legally required to explain why Mr. Kitzman would approve a design he knew to be flawed to prevail on its negligence and negligent misrepresentation claims. *See Casebolt v. Cowan*, 829 P.2d 352, 356 (Colo.1992) (setting forth the elements of negligence); *Keller v.*

*A.O. Smith Harvestore Products, Inc.,* 819 P.2d 69, 71 n. 2 (Colo.1991) (setting forth the elements of negligent misrepresentation).

Though Hamon was not successful on its claims against Mr. Kitzman, they were based on rational arguments. Therefore, we conclude that the district court' finding that Hamon's claims against Mr. Kitzman were frivolous was an abuse of discretion.

### 3. Substantially Groundless

■■■ A claim is groundless "if the allegations in the complaint, while sufficient to survive a motion to dismiss for failure to state a claim, are not supported by any credible evidence at trial." *Western United Realty,* 679 P.2d at 1069; *accord City of Aurora,* 105 P.3d at 618; *Ranta Constr., Inc. v. Anderson,* 190 P.3d 835, 846 (Colo.App.2008). "This test assumes that the proponent has a valid legal theory, but offers little in the way of evidence to support the claim . . . ." *City of Aurora,* 105 P.3d at 618; *accord Western United Realty,* 679 P.2d at 1069; *Wheeler,* 74 P.3d at 505. The fact that a claim is dismissed on summary judgment does not preclude a finding that it was substantially groundless. *See Wheeler,* 74 P.3d at 505–06; *Lockett v. Garrett,* 1 P.3d 206, 212 (Colo.App. 1999).

The district court found that all of Hamon's claims were groundless because it "could present no evidence to support its allegation that the Defendants knew the design was inadequate, or that the culverts were in fact inadequate." The court found that Hamon's pre-contractual claims against C & B were groundless for the additional reason that "Hamon could not articulate any duty [C & B] owed that was separate from the web of contracts." Finally, the court found that the pre-contractual claims against Mr. Kitzman were also groundless "because no prior notice was given to Kitzman as required by the [CGIA]."

We conclude that the district court abused its discretion in relying on the lack of evidence that C & B and Mr. Kitzman knew the drainage design was insufficient, or that the drainage was in fact inadequate. The district court did not enter summary judgment for either of these reasons. Rather, Ha-

mon's claims failed because of the absence of tort duties.

■ In making this finding, the district court relied largely on the evidence presented at the *Trinity* hearing. However, a *Trinity* hearing is not a substitute for a trial on the merits, and the claimant is not required to prove the merits of its claim at such a hearing. The subject of such a hearing is whether the governmental agency or employee has immunity. *See Tidwell,* 83 P.3d at 85–86; *Trinity Broadcasting,* 848 P.2d at 924 (the focus of the hearing is the factual attack on the jurisdictional allegations of the complaint). Thus, the issue whether Hamon had evidence supporting the particular allegations to which the district court referred in awarding attorney fees was never squarely presented. It follows that Hamon cannot be ordered to pay attorney fees merely because it did not present evidence in support of those allegations. Therefore, we vacate this aspect of the district court's orders.

■ Whether the district court abused its discretion in concluding that Hamon's pre-contractual claims against C & B were groundless because it failed to demonstrate a genuine issue of material fact as to a duty independent of the interrelated contracts presents a closer question. We note that the determination of groundlessness assumes a proper legal theory. Hamon articulated a proper legal theory by relying on an alleged independent duty. It further articulated a basis for such a duty. However, Hamon did not present evidence supporting the existence of such a duty. Because we have determined that the affidavit of Hamon's expert professional engineer was insufficient to establish a genuine factual issue as to a pre-contractual duty, it follows that these claims were substantially groundless, and, thus, that the district court did not abuse its discretion.

Finally, we also conclude that the district court did not abuse its discretion in finding that Hamon's pre-contractual claims against Mr. Kitzman were groundless because it failed to give the required notice under the CGIA. Hamon relied exclusively on the April and May 2005 letters to show that it gave the required notice. As discussed above, those

letters were insufficient in content as a matter of law. Thus, the pre-contractual claims were unsupported by evidence and therefore substantially groundless.

### 4. Substantially Vexatious

██ "A 'vexatious' claim is one brought or maintained in bad faith." *Mitchell v. Ryder,* 104 P.3d 316, 321 (Colo.App.2004); *accord City of Holyoke v. Schlachter Farms R.L.L.P.,* 22 P.3d 960, 963 (Colo.App.2001). This includes "conduct that is arbitrary, abusive, stubbornly litigious, or disrespectful of truth." *Bockar v. Patterson,* 899 P.2d 233, 235 (Colo.App.1994); *accord City of Holyoke,* 22 P.3d at 963; *see also Western United Realty,* 679 P.2d at 1069.

In awarding attorney fees to Mr. Kitzman, the district court stated that Hamon's claims were "groundless, frivolous, and vexatious." The court articulated why it concluded that Hamon's claims against Mr. Kitzman were frivolous and groundless, but it did not articulate why it concluded that those claims were vexatious. Absent findings on this issue, we do not have an adequate record to review the district court's determination. *See Pedlow v. Stamp,* 776 P.2d 382, 384–85 (Colo.1989) (district court must make findings supporting an award of attorney fees under section 13–17–102); *Bd. of County Comm'rs v. Auslaender,* 745 P.2d 999, 1001 (Colo.1987) (same); *In re Marriage of Gomez,* 728 P.2d 747, 750 (Colo.App.1986) (same). Therefore, we vacate this aspect of the order awarding attorney fees to Mr. Kitzman and remand for further findings as to why Hamon's claims against him were vexatious. *See Pedlow,* 776 P.2d at 385; *In re Marriage of Gomez,* 728 P.2d at 750.

██ The district court found that Hamon's post-contractual claims against C & B were vexatious because Hamon continued to pursue them after the court dismissed the same claims against the City and Mr. Kitzman. Thus, the district court appears to have determined that in continuing to pursue these claims, Hamon was stubbornly litigious. We conclude that this determination is not supported by the record.

We agree with Hamon that the district court effectively ruled that it had been stub-

bornly litigious merely because it disagreed with the district court's earlier ruling as to its claims against the City and Mr. Kitzman, and had refused to voluntarily dismiss or confess judgment on its similarly-premised claims against C & B. Even though the district court characterized its earlier ruling as the "law of the case," it retained discretion to revisit that ruling. *In re Bass,* 142 P.3d 1259, 1263 (Colo.2006); *Giampapa,* 64 P.3d at 243. Hamon cannot be faulted for attempting to convince the court to reconsider its view of the applicable law. We also observe that the claims against C & B involved slightly different factual allegations than those against Mr. Kitzman. Therefore, the district court erred in determining that Hamon should have simply dropped its post-contractual claims against C & B.

The orders awarding C & B and Mr. Kitzman attorney fees and costs for Hamon's pre-contractual claims stand. However, the orders are otherwise vacated. On remand, the court shall make findings as to whether Hamon's post-contractual claims against Mr. Kitzman were substantially vexatious. In the event the court determines that Hamon's post-contractual claims against Mr. Kitzman were not substantially vexatious, the court shall redetermine the reasonable amount of attorney fees and costs to which Mr. Kitzman is entitled for defending against the pre-contractual claims in the district court. The court shall also redetermine the reasonable amount of attorney fees to which C & B is entitled for defending against Hamon's pre-contractual claims in the district court.

## VII. Attorney Fees on Appeal

Both C & B and Mr. Kitzman request an award of attorney fees on appeal. We deny those requests because we conclude that Hamon's arguments on appeal are not frivolous.

## VIII. Conclusion

The summary judgments are affirmed. The order dismissing the pre-contractual claims against Mr. Kitzman for lack of subject matter jurisdiction is also affirmed. The orders awarding defendants attorney fees and costs are affirmed as to Hamon's pre-contractual claims and vacated in all other

respects. The case is remanded to the district court for proceedings on the motions for attorney fees and costs consistent with this opinion.

Judge RUSSEL and Judge GABRIEL concur.