2012 COA 134

**Terence Timothy CASEY, as a representative of a class consisting of pre–6/30/2003 employees of Mesa State College who contributed to the Disability Trust; and Joseph Taylor, as a representative of a class consisting of all post–6/30/2003 employees of Mesa State College who contributed to the Disability Trust, Plaintiffs–Appellees,**

**v.**

**COLORADO HIGHER EDUCATION INSURANCE BENEFITS ALLIANCE TRUST; Adams State College; Auraria Higher Education Center; Colorado School of Mines; Colorado State University at Pueblo; Fort Lewis College; Metropolitan State College of Denver; University of Northern Colorado; Western State College; and the following trustees in their official capacity as trustees of the Colorado Higher Edu-**

cation Insurance Benefits Alliance Trust, Darren Mathews, Ken Nufer, Kim Gailey, Judy Zewe, Marshall Parks, Mike Dougherty, Tracy Rogers, Blaine Nickeson, and Dee Martinez, Defendants–Appellants.

No. 10CA1188.

Colorado Court of Appeals, Div. VII.

Aug. 16, 2012.

As Modified on Denial of Rehearing Sept. 13, 2012.*

* Hawthorne, J., would grant.

Opinion by Judge BERNARD.

¶ 1 This appeal requires us to decide whether the claims of employees in a lawsuit against public entities and public employees lie, or could lie, in tort. If so, the claims must be dismissed under the Colorado Governmental Immunity Act (CGIA). If not, the claims may proceed. We conclude that, under the circumstances here, some parts of the employees' claims are barred, but some are not. As a result, we affirm in part, reverse in part, and remand for further proceedings.

## I. Background

¶ 2 Beginning in 1992, employees of nine Colorado colleges, including Mesa State College, contributed to a trust designed to provide long-term disability benefits for them if they were to become disabled. Each participating college appointed a trustee to the trust committee. The trust agreement required the employees and Mesa State to make these contributions.

¶ 3 The original trust was succeeded in 2003 by another, the Colorado Higher Education Insurance Benefits Alliance (CHEIBA) Trust.

¶ 4 The trustees of both trusts intentionally set the contribution amount higher than the anticipated benefit payments to create a reserve fund.

¶ 5 Mesa State withdrew from the CHEIBA trust in 2005, and it created a new disability trust. Mesa State and its employees then asked the CHEIBA trust to release approximately $1 million from the reserve fund that Mesa State and its employees had contributed to the original trust and to the CHEIBA trust. This money would be placed in the new trust, which would be administered by a new trustee. The CHEIBA trust refused this request.

¶ 6 Some of Mesa State's employees filed a class action suit to recover their share of the reserve fund. Plaintiff Terence Timothy Casey represents a class of employees who contributed to the original trust. Plaintiff Joseph Taylor represents a class of employees who contributed to the CHEIBA trust.

¶ 7 The defendants in this lawsuit are the CHEIBA trust; the eight other colleges that participated in the original trust and that continue to participate in the CHEIBA trust; and, in their official capacities, the trustees of the CHEIBA trust.

¶ 8 The employees alleged that they were third-party beneficiaries of the trust agreement. They claimed that defendants breached the contract, in the form of the trust agreements. This claim asserts that defendants

> failed to perform their contractual obligations owed to plaintiffs including contractually imposed fiduciary duties and duties of good faith and fair dealing by depriving [p]laintiffs of all benefits of the trust reserve fund ... and by taking action when they knew or should have known that it would afford employees of the [d]efendant [c]olleges a disproportionately larger amount of the trust reserves and leave [p]laintiffs with none of the reserve.

¶ 9 As relevant here, the employees requested relief in the complaint consisting of (1) an accounting to determine their share of the reserve fund; and (2) a declaratory judgment detailing the parties' rights and duties relative to the two trust agreements, including a disbursement of their share of the reserve funds to the trustee administering the new trust.

¶ 10 The employees originally filed this case in Mesa County. The defendants obtained a change of venue to Denver, where it was filed in the Denver Probate Court.

¶ 11 Defendants then moved to dismiss the case under C.R.C.P. 12(b)(1) and (5), arguing, in part, that the probate court did not have subject matter jurisdiction because the employees' claims were barred by the doctrine of sovereign immunity under the CGIA. Defendants also asked the court to dismiss the lawsuit for other reasons, including their contention that the employees' complaint failed to state a claim for relief under C.R.C.P. 12(b)(5). The probate court, in a written order, denied the motion to dismiss without holding a hearing.

## II. Immunity Under the CGIA

¶ 12 Defendants contend that the probate court lacked subject matter jurisdiction because all of the employees' claims are barred by the CGIA. For the reasons we describe below, we agree as to some parts of some of the claims, but not as to others.

### A. Standard of Review

¶ 13 Section 24–10–108, C.R.S.2011, authorizes trial courts to decide pretrial whether a public entity and public employees are immune from suit. Whether a public entity and its employees are immune from suit is an issue of subject matter jurisdiction that is resolved under C.R.C.P. 12(b)(1), and the plaintiff bears the burden of establishing that immunity has been waived. *Gray v. University of Colorado Hospital Authority*, 2012 COA 113, ¶ 16, 284 P.3d 191. When the trial court denies the public entity's C.R.C.P. 12(b)(1) motion and concludes that it has subject matter jurisdiction over the case, the public entity may seek interlocutory appellate review in this court. *City & County of Denver v. Crandall*, 161 P.3d 627, 633 (Colo. 2007).

¶ 14 Where, as here, the facts are not disputed for purposes of determining whether the probate court lacked subject matter

jurisdiction, we review de novo the probate court's jurisdictional ruling. *Springer v. City & County of Denver*, 13 P.3d 794, 798 (Colo. 2000). (We note that neither party requested a *Trinity* hearing at which the trial court could have considered factual disputes. *See Trinity Broadcasting, Inc. v. City of Westminster*, 848 P.2d 916 (Colo.1993).)

### B. General Principles Concerning the CGIA

¶ 15 The CGIA does not apply to actions "grounded in contract." *Berg v. State Bd. of Agriculture*, 919 P.2d 254, 258 (Colo.1996). However, aside from limited exceptions not relevant here, the CGIA bars "any action against a public entity" or its employees "for injury which lies in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by a claimant." §§ 24–10–108, 24–10–118(2)(a), C.R.S.2011; *see* § 24–10–106, C.R.S.2011. In these circumstances, the issue under the CGIA is not whether the contract claim was properly pled, but, instead, whether the claim could have been brought as a tort. This is a jurisdictional issue. *City of Lakewood v. Brace*, 919 P.2d 231, 244 (Colo.1996).

¶ 16 Because the complaint's form is not determinative when evaluating whether a claim lies in tort or could lie in tort, we must examine the nature of the alleged injury and the relief the plaintiff seeks. *See Patzer v. City of Loveland*, 80 P.3d 908, 910 (Colo.App.2003). For example, as pertinent here, when determining whether a claim of breach of contract lies, or could lie, in tort,

> [t]he essential difference between a tort obligation and a contract obligation is the source of the parties' duties. Contract obligations arise from promises made between parties. Tort obligations generally arise from duties imposed by law, and tortious conduct is a breach of a duty imposed by law, not by contract.

*Carothers v. Archuleta County Sheriff*, 159 P.3d 647, 655–56 (Colo.App.2006). Thus,

> [w]hen the injury arises either out of conduct that is tortious in nature or out of the breach of a duty recognized in tort law, and when the relief seeks to compensate the plaintiff for that injury, the claim likely

lies in tort or could lie in tort for purposes of the CGIA.

*Robinson v. Colorado State Lottery Div.*, 179 P.3d 998, 1003 (Colo.2008).

¶ 17 To apply these principles, we must examine the pleadings, the undisputed evidence, and the trust agreements. *Id.* at 1004. If we conclude that a claim lies, or could lie, in tort, we will hold that it must be dismissed because it is barred by the CGIA. But if we determine that a claim lies solely in contract, we will hold that it should not be dismissed, and that it must be remanded to the probate court for further proceedings. *See CAMAS Colorado, Inc. v. Board of County Comm'rs*, 36 P.3d 135, 141 (Colo.App. 2001) (reversing judgment dismissing contractual claims, but affirming dismissal of claims that lie or could lie in tort).

### C. Analysis of Claims

#### 1. Breach of Contract, Alleging Breach of Fiduciary Duty and Breach of the Implied Covenant of Good Faith and Fair Dealing

¶ 18 Defendants contend that the employees' breach of contract claim, which contains an allegation that the defendants breached their fiduciary duties, lies, or could lie, in tort. Therefore, they argue, the breach of contract claim is barred by the CGIA.

¶ 19 In order to resolve this issue, we do not focus on whether the breach of contract claim was properly pled, but whether the claim could have been brought as a tort. *Brace*, 919 P.2d at 244. To do so, we must find the source of the duty, which includes, in part, analyzing the trust documents and the pleadings. *See Robinson*, 179 P.3d at 1004. And that inquiry is de novo, because whether there is a tort duty that is independent of a contractual duty is a question of law. *See Rhino Fund, LLLP v. Hutchins*, 215 P.3d 1186, 1193 (Colo.App.2008).

¶ 20 We analyze the documents creating the original trust and the CHEIBA trust in the manner that we would interpret a contract. *See Denver Foundation v. Wells Fargo Bank*, 163 P.3d 1116, 1122 (Colo.2007). The interpretation of the trust agreements is

also an issue of law that we review de novo. *Id.*

¶ 21 Our goal in the course of this review is to give effect to the intent of the parties to the trust agreements. We determine this intent from the agreements' language, and we interpret the various provisions in the agreements as a whole, giving effect to all of them. By doing so, we avoid rendering any single provision meaningless. *Id.*

### a. The Trustees

■ ¶ 22 We conclude that the trust agreements are the source of the trustees' fiduciary duty described in the employees' breach of contract claim. As a result, the economic loss rule bars the employees from any tort recovery from the trustees.

¶ 23 The economic loss rule preserves the boundary between contract law and tort law. *Town of Alma v. AZCO Construction, Inc.*, 10 P.3d 1256, 1262 (Colo.2000). Courts determine the side of the boundary upon which a claim belongs by finding "the source of the duty that forms the basis for the action," rather than by evaluating whether damages are economic or physical. *Id.*

¶ 24 Contractual duties arise from the promises that contracting parties make to each other. Tort duties generally are created by law, and are designed to protect all citizens from risks that their persons or property will be injured. *Id.*

■ ¶ 25 The economic loss rule bars recovery in tort when a plaintiff suffers only economic loss from the breach of an express or implied contractual duty, unless tort law creates an independent duty. *Grynberg v. Agri Tech, Inc.*, 10 P.3d 1267, 1269 (Colo. 2000). Thus,

> some special relationships by their nature automatically trigger an independent duty of care that supports a tort action even when the parties have entered into a contractual relationship.... In these situations where we have recognized the existence of a duty *independent* of any contractual obligations, the economic loss rule has no application and does not bar a plaintiff's tort claim because the claim is based on a recognized independent

duty of care and thus does not fall within the scope of the [economic loss] rule.

*AZCO Construction*, 10 P.3d at 1263 (citations omitted) (emphasis in original).

¶ 26 However, as the division pointed out in *Hamon Contractors, Inc. v. Carter & Burgess, Inc.*, 229 P.3d 282, 291 (Colo.App.2009), *AZCO Construction* does not stand for the proposition that the economic loss rule always bars certain torts, sometimes bars others, and never bars still others. The division observed that, rather than enunciating a "sweeping principle" that a particular tort is exempted "from the ambit of the economic loss rule," *AZCO Construction* stresses that it is the source of the duty allegedly breached that determines whether the economic loss rule applies. *Id.*

¶ 27 Courts consider three factors to determine the source of the duty: Is the relief sought in tort the same relief sought for breach of contract? Is there an established common law duty of care? Does the tort duty differ from the contractual duty? *Id.* at 293 (citing *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 74 (Colo.2004)).

¶ 28 If the answers to these questions establish that the duty of care is "memorialized" in the contract, it follows that (1) there is no duty independent of the contract; (2) the economic loss rule bars the tort claim; and (3) the parties are held to the terms of the contract that they negotiated. *BRW, Inc.*, 99 P.3d at 74. "[E]ven a duty separately recognized under tort law is not independent if it is also imposed under the parties' contract" because courts assume that sophisticated parties can include the potential cost of breach of contractual duties in contracts they negotiate. *A Good Time Rental, LLC v. First American Title Agency, Inc.*, 259 P.3d 534, 537 (Colo.App.2011).

■ ¶ 29 Fiduciary relationships may be the kind of special relationship that will trigger an independent common law duty of care. *See Cosmopolitan Homes, Inc. v. Weller*, 663 P.2d 1041, 1043–44 (Colo.1983) (builders have a duty independent of contract to build a home without latent defects for the benefit of subsequent buyers); *Colorado Homes, Ltd. v. Loerch–Wilson*, 43 P.3d 718, 721–22

(Colo.App.2001)(homeowners' associations have a duty independent of contract to enforce restrictive covenants for the benefit of homeowners). However, "not every fiduciary relationship implicates a risk of damages for which contract law cannot provide a remedy." *A Good Time Rental, LLC*, 259 P.3d at 540.

■ ¶ 30 Applying the foregoing principles, and particularly the three factors from *BRW, Inc.*, we conclude that

1. The complaint does not allege a tort claim for breach of fiduciary duty against the trustees. Rather, it alleges that the trustees breached the contract—the trust agreements—by "fail[ing] to perform their contractual obligations, including contractually imposed fiduciary duties." We know that the form of the complaint does not establish whether a claim lies in contract or in tort. *Carothers*, 159 P.3d at 655. However, the reference in the complaint to the specific contractual duties found in the trust agreements establishes that the claim lies in contract, not in tort, because it identifies the source of the duty as the trust agreements. *See id.* at 655–56. In other words, the employees' breach of fiduciary duty claim against the trustees arises from the alleged failure to perform the fiduciary duties set forth in the trust agreements, not from extrinsic matters. *See Hamon Contractors, Inc.*, 229 P.3d at 289.

2. An established common law tort duty of care attaches to fiduciary relationships between trustees and beneficiaries. *See Vento v. Colorado Nat'l Bank–Pueblo*, 907 P.2d 642, 646 (Colo. App.1995)("A trustee owes a duty to trust beneficiaries to exercise such care and skill as a person of ordinary prudence would exercise in safeguarding and preserving his or her own property."); *see also* § 15–1–304, C.R.S.2011 (standard of care of fiduciaries who invest property for others is the same); Restatement (Second) of Trusts § 174 (1959)("The trustee is under a duty to the beneficiary in administering the trust to exercise such care and skill as a man of ordinary prudence would exercise in dealing with his own property....").

3. In this case, the tort duty is not appreciably different from the contractual duty. The fiduciary duty that tort law imposes on trustees generally is nearly identical to the fiduciary duty that the language of the trust agreements imposes on the trustees here. The trust agreements explicitly spell out the trustees' duties in the section labeled "Fiduciary Duties." The trustees are required to act on behalf of the beneficiaries with the "care, skill, prudence and diligence" that "prudent person[s]" acting in the same position, and undertaking the same "enterprise," would employ under the prevailing circumstances.

4. Because the trustees' duty of care is "memorialized" in the trust agreements, there is no common law tort duty independent of that document upon which a tort action for breach of fiduciary duty could be based. *See BRW, Inc.*, 99 P.3d at 74; *CAMAS Colorado, Inc.*, 36 P.3d at 138 ("In determining whether a claim is contractual or lies in tort, a court should examine whether the claim and the duty allegedly breached arise from the terms of the contract itself.").

5. The employees' allegations are clearly based on the duty owed them that is described in the trust agreements, not on a general duty imposed by law that is designed to protect all persons from a risk of harm. *See Adams v. City of Westminster*, 140 P.3d 8, 11 (Colo.App.2005)("[P]laintiff has not asserted that [defendant] breached a duty imposed by law to protect all citizens from a risk of harm, nor could he successfully do so. Instead, the essence of plaintiffs claim is that he has suffered economic losses arising from the employment contract. Under the economic loss rule, it is highly doubtful that plaintiff could assert a tort claim against [defendant].").

6. The language in the trust agreements creating the fiduciary duty indicates that sophisticated parties negotiated this contract. *See A Good Time Rental, LLC*, 259 P.3d at 537. Therefore, the trustees and the employees should be held to the terms of the contract for which they bargained.

7. The trustees have not provided us with any compelling policy reasons why, notwithstanding the contractual fiduciary duty established by the trust agreements, a remedy based on common law tort fiduciary duty should be available in this case. *See id.* at 540; *Hamon Contractors, Inc.*, 229 P.3d at 292.

8. Any tort claim for breach of fiduciary duty that the employees attempt to inject into this case concerning the trustees would be barred by operation of the economic loss rule. *See BRW, Inc.*, 99 P.3d at 74; *see also Action Nissan, Inc. v. Hyundai Motor America*, 617 F.Supp.2d 1177, 1192–93 (M.D.Fla.2008) ("While the economic loss rule does not automatically bar a breach of fiduciary duty claim, the rule does apply when the claim for breach of fiduciary duty is based upon and inextricably intertwined with the claim for breach of contract."); *Micale v. Bank One*, 382 F.Supp.2d 1207, 1221–22 (D.Colo.2005). Under the facts of this case, the employees' breach of fiduciary duty claim against the trustees is not, and cannot be, a tort claim.

9. The CGIA does not bar the employees' breach of contract claim against the trustees because the CGIA does not bar claims, such as this one, that are grounded in contract. *See Berg v. State Bd. of Agriculture*, 919 P.2d 254, 258 (Colo.1996).

¶ 31 We next turn to defendants' argument that the CGIA bars the employees' claim that the trustees violated the covenant of good faith and fair dealing implied in the trust agreements because it lies, or could lie, in tort. Every contract contains an implied covenant of good faith and fair dealing. *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo.1995)("Colorado, like the majority of jurisdictions, recognizes that every contract contains an implied duty of good faith and fair dealing.").

¶ 32 With the notable exception of insurance contracts, which are not involved in this case, a contention that this implied covenant has been violated does not allege a tort. *See Cary v. United of Omaha Life Ins. Co.*, 68 P.3d 462, 466 (Colo.2003)(in most contractual relationships, a breach of the duty of good faith and fair dealing will only result in damages for breach of contract and will not give rise to tort liability); *Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc.*, 872 P.2d 1359, 1362 (Colo.App.1994)("Colorado has also recognized a separate cause of action sounding in tort for bad faith breach of *insurance* contract. However, no such tort claim has been recognized in other contract actions...."); *see also Decker v. Browning–Ferris Industries of Colorado, Inc.* 931 P.2d 436, 446 (Colo.1997)(declining to recognize existence of tort claim for breach of an express covenant of good faith and fair dealing in employment contracts).

¶ 33 We are not at liberty, in a case such as this one, to classify an allegation that the implied covenant has been violated as a tort. *See Decker*, 931 P.2d at 446 (in the absence of administrative or legislative public policy declarations ensuring that all interested parties are aware of the relevant duty's scope, "there is no appropriate basis upon which to ground a tort of breach of an express covenant of good faith and fair dealing"); *see also Farmers Group, Inc. v. Trimble*, 691 P.2d 1138, 1141 (Colo.1984) ("The basis for liability in tort for the breach of an insurer's implied duty of good faith and fair dealing is grounded upon the special nature of the insurance contract and the relationship which exists between the insurer and the insured.").

¶ 34 Last, defendants contend that the employees base their claim on duties that are independent of the trust agreement. They argue that the employees identify a duty to disburse their contributions from the reserve fund and a duty to treat them equally with all other beneficiaries of the trust. We respectfully disagree with defendants' contention be-

cause we do not read the employees' complaint in the same way.

¶ 35 The breach of contract claim in the complaint states that defendants (1) deprived the employees of "all benefits of the trust reserve fund"; and (2) took action "when they knew or should have known that it would afford employees of [the colleges] a disproportionately larger amount of the trust reserves and leave [the employees] with none of the reserve." In context, these statements are not a description of a duty, but, rather, a description of how the trustees breached the fiduciary duty established by the trust agreements and the implied covenant of good faith and fair dealing.

¶ 36 This conclusion is reinforced by statements in the declaratory judgment claim in the complaint. There, the employees allege that the colleges owed the employees "undivided loyalty" in appointing the trustees; that the colleges breached their "contractually imposed fiduciary obligation"; and that this breach allowed the trustees to "act in a manner intending to benefit their respective colleges and the employees of their respective colleges."

¶ 37 Accordingly, the employees' claim that the trustees breached the implied covenant of good faith and fair dealing is not barred by the CGIA.

### b.   The Colleges

¶ 38 We agree with defendants, however, that the allegation that the colleges breached any fiduciary duties they owed the employees lies, or could lie, in tort.

¶ 39 The employees' complaint alleges that the colleges breached a "contractually imposed fiduciary duty" to the employees. However, the language of the trust agreements only places fiduciary duties on the trustees, not on the colleges. Thus, based on our de novo review of the record before us, *see Rhino Fund, LLLP,* 215 P.3d at 1193, the only source of a fiduciary duty that the colleges may owe the employees would be the common law. *See* § 15–1–304; *Vento,* 907 P.2d at 646; Restatement (Second) of Trusts § 174. Therefore, this portion of the breach of contract claim is barred by the CGIA.

¶ 40 However, the employees' contention that the colleges violated the implied covenant of good faith and fair dealing is not inextricably bundled with the allegation that the colleges violated their contractually imposed fiduciary duties. The complaint distinguishes between those two parts of the breach of contract claim by stating that the defendants "failed to perform their contractual obligations owed to [the employees], including contractually imposed fiduciary duties *and* duties of good faith and fair dealing." (Emphasis supplied.)

¶ 41 Thus, although the part of the breach of contract claim alleging that the colleges violated their fiduciary duties is barred by the CGIA, the claim that they violated the implied covenant of good faith and fair dealing is not barred because it does not, and cannot, lie in tort. *See Cary,* 68 P.3d at 466; *Decker,* 931 P.2d at 446; *Farmers Group, Inc.,* 691 P.2d at 1141; *Wells Fargo Realty Advisors Funding, Inc.,* 872 P.2d at 1362.

### 2.   Inverse Condemnation

¶ 42 Defendants contend that the CGIA bars the employees' inverse condemnation claim. We disagree.

¶ 43 Colorado Constitution article II, section 15, prohibits the government from taking private property without just compensation. If a governmental entity does not commence an eminent domain proceeding, the private property owner may institute an inverse condemnation proceeding under the eminent domain statute. *Conners v. City of Colorado Springs,* 962 P.2d 294, 296 (Colo. App.1997), *aff'd,* 993 P.2d 1167 (Colo.2000)(*Conners II*). An inverse condemnation action is neither contractual nor tortious in nature. *See Conners II,* 993 P.2d at 1170 (affirming court of appeals' opinion reasoning that Colorado Civil Rights Act claim is similar to other actions authorized against the government that are neither contractual nor tortious in nature and not subject to the CGIA). Because an inverse condemnation claim could not lie in tort, it is not barred by the CGIA. *Jorgenson v. City of Aurora,* 767 P.2d 756, 758 (Colo.App.1988)(inverse condemnation claim is not subject to

CGIA); *Srb v. Bd. of County Comm'rs,* 43 Colo.App. 14, 19, 601 P.2d 1082, 1085 (1979)(just compensation clause of Colorado Constitution is an exception to governmental immunity).

¶ 44 Defendants also assert grounds other than the CGIA for reversing the probate court's order concerning the inverse condemnation claim. We decline to address those other grounds because we do not have jurisdiction to resolve them within the context of this interlocutory appeal. *See Carothers,* 159 P.3d at 650 (trial court's order denying a motion to dismiss pursuant to C.R.C.P. 12(b)(5) is not an appealable final order).

### 3. Mistake

¶ 45 Defendants assert that language in the trust agreements bars the employees from obtaining the relief that they seek. The employees' complaint alleges that the defendants deprived them of their share of the reserve fund, and they want their share disbursed to the trustee who is administering the new disability trust. Defendants reply that both trust agreements explicitly provide that contributions are irrevocable unless a majority of the trustees votes to dissolve the trusts.

¶ 46 Defendants state that restrictions on recovery of contributions appear, for example, in three sections of the CHEIBA trust agreement. Article V, section 5.8, provides:

[A]ll contributions to the Trust shall be irrevocable, and under no circumstances shall any monies properly paid into the Trust or any part of the Trust, including any increments to the Trust arising from its investments, be recoverable by or payable to the Colleges or any Participant, nor shall any of the same be used for or diverted to purposes other than for the exclusive benefit of Employees and Participants under this Trust Agreement. The Trust Committee may authorize a distribution from the Trust Fund to participating Employees of any portion of an insurance policy premium refund, rebate or dividend attributable to Employee Contributions, if such a rebate to Employees is appropriate under the circumstances.

Article VI, section 6.2(c), states:

In the event of a College's withdrawal pursuant to this section, such withdrawing College shall have no right to any of the assets, income or reserves of the Trust at any time, nor shall such College have any right to a refund or rebate of any of its contributions to the Trust.

Article X, section 10.1, adds:

Neither any Employee [nor any] Participant ... shall have any right, title or interest, vested or otherwise, in or to any assets of the Trust, whatsoever ... except to the extent otherwise specifically provided for in this Agreement. Any participating Employee who withdraws or ceases to participate in the program does hereby and shall immediately and expressly waive and forfeit any right, title or interest in or to any assets of the trust. Any benefits such Participant may have shall be forever terminated and discharged when this Agreement is terminated, the Trust dissolved or a Participant ceases to be eligible under the terms of any Benefit Plan....

¶ 47 The employees seek to nullify this language, particularly Article X, section 10.1. They allege, as part of their declaratory judgment claim, that they are entitled to a declaration that their contributions to the CHEIBA trust that "purport to authorize a forfeiture" of the contributions that they made to it are null and void because of either unilateral or mutual mistake. We conclude that this part of the declaratory judgment claim is barred by the CGIA because it lies, or could lie, in tort.

¶ 48 The doctrine of mistake allows the mistaken party to avoid the contract. *Sumerel v. Goodyear Tire & Rubber Co.,* 232 P.3d 128, 135 (Colo.App.2009); *see also Poly Trucking, Inc. v. Concentra Health Services, Inc.,* 93 P.3d 561, 563 (Colo.App. 2004) (reformation is generally permitted when the parties made a mutual mistake or one party made a unilateral mistake and the other engaged in fraud or inequitable conduct). Remedies for mistake, such as contract reformation and rescission, are equitable in nature. *Morris v. Belfor USA Group, Inc.,* 201 P.3d 1253, 1260 (Colo.App.2008)(reformation is an equitable remedy); *CAMAS*

*Colorado, Inc.,* 36 P.3d at 139 (rescission is an equitable remedy afforded upon a showing of mistake).

¶ 49 Unilateral mistake applies where one party is mistaken about a basic contractual assumption. *Sumerel,* 232 P.3d at 135. A mutual mistake claim requires a showing that both parties were laboring under the same erroneous conception of the contract's terms and conditions. *Maryland Cas. Co. v. Buckeye Gas Products Co.,* 797 P.2d 11, 13 (Colo.1990).

¶ 50 As is pertinent here, the employees contend that the ones in their ranks who contributed to the original trust were not represented when the CHEIBA trust was created. Further, an attorney from the Attorney General's Office allegedly

- represented all the colleges, resulting in a conflict of interest;
- did not inform each college that, if it chose, it was entitled to independent counsel;
- did not inform the trustees that, by approving the CHEIBA trust, they could foreseeably discriminate among different beneficiaries, violating a contractually imposed duty to afford equal treatment to all trust beneficiaries; and
- inserted Article X, section 10.1, into the CHEIBA trust without the employees' knowledge.

¶ 51 The employees thus maintain that the attorney's *misconduct* renders the language in the CHEIBA trust barring the disbursement of any of their contributions void because that misconduct resulted in a unilateral or a mutual mistake. By doing so, the employees base their unilateral and mutual mistake arguments on the prospect of legal malpractice or misrepresentation by the attorney.

¶ 52 As such, the source of the duty that the attorney owed the trustees, and, by implication, the employees, is not found in the trust agreements, but in the special responsibility that attorneys owe their clients. *See A Good Time Rental, LLC,* 259 P.3d at 539. That special responsibility creates a duty of care independent of any contract, which "implicates a risk of damages to interests that contract law is not well suited to protect." *Id.* The existence of this special duty supports a tort action, and so the employees' allegation of a unilateral or mutual mistake lies, or could lie, in tort. *Id.; see also AZCO Construction,* 10 P.3d at 1262. And, as the supreme court noted in *Robinson,* 179 P.3d at 1005, "a claim that is supported by allegations of misrepresentation or fraud is likely a claim that could lie in tort."

¶ 53 Further, our conclusion is buttressed by two complementary factors. First, neither the Attorney General's Office, nor the attorney from that office who represented the colleges, is a party to the trust agreements. Second, neither that office, nor that attorney, is a party to this case. Thus, the "author" of the alleged mistake is not a party to the trust agreement and is not before the trial court. *See Del Raso v. United States,* 244 F.3d 567, 571 (7th Cir.2001) (mutual mistake of fact did not apply when contention was that a party to a contract had a misunderstanding with a person who was not a party to the contract); *Alden Auto Parts Warehouse, Inc. v. Dolphin Equipment Leasing Corp.,* 682 F.2d 330, 333 (2d Cir. 1982) (a fraud committed by a person who is not a party to a contract does not support a claim that the contract should be rescinded because of unilateral mistake).

¶ 54 Although we conclude that the part of the declaratory judgment claim alleging mutual or unilateral mistake is barred by the CGIA, we cannot further decide what effect the language in the trust agreements, which bars release of funds from the trust, may have on the employees' claims and their requests for relief. This is because the applicability and scope of *this* language are not properly before us in this interlocutory appeal, which is limited to addressing issues of sovereign immunity under the CGIA. *See Adams,* 140 P.3d at 12 ("[I]nterlocutory appeals under § 24–10–108 are limited to determining issues of sovereign immunity. Determining merits-based issues would expand the nature of appellate review beyond that mandated by statute.").

¶ 55 Further, we cannot anticipate, at this juncture, whether (1) the applicability of this language hinges on factual findings that we cannot and should not make here, such as findings that the trustees breached, or did not breach, their contractually established fiduciary duties (a) by not explaining the consequences of the change from the original trust to the CHEIBA trust to the employees; (b) by depriving the employees of their share of the reserve fund; or (c) by treating the employees in a discriminatory manner with regard to their share of the reserve fund; or (2) the employees have a persuasive legal argument to avoid the effect of this language.

¶ 56 We obviously take no position on the merits of such arguments. As a result, we can only recognize the existence of the "elephant in the room." The employees and the defendants will have to confront it on remand as this case proceeds because we have concluded that some of the employees' claims are not barred by the CGIA.

### III. Conclusion

Based on the foregoing analysis, we hold that

- The employees' breach of contract claim alleging that the trustees breached their fiduciary duty does not, and could not, lie in tort because the trustees' fiduciary duty in this case was created by contract, in the form of the trust agreements. Any tort claim for breach of fiduciary duty that the employees might raise against the trustees would be barred by operation of the economic loss rule.
- The employees' breach of contract claim that the trustees violated the implied covenant of good faith and fair dealing does not, and could not, lie in tort.
- The employees' breach of contract claim alleging that the colleges breached their fiduciary duties lies, or could lie, in tort because the contractual provisions concerning fiduciary duties, found in the trust agreements, only apply to the trustees. The source of any fiduciary duty that the colleges owe the employees thus lies outside the trust agreements, and would be found in statute or common law. This part of the breach of contract claim against the colleges must be dismissed on remand.
- However, the colleges are parties to the trust agreements. The employees' claim that the colleges breached the implied covenant of good faith and fair dealing is, as relevant here, a contractual claim, not a claim that lies, or could lie, in tort.
- The employees' claim that their contributions to the trusts should be returned because of mutual or unilateral mistake lies, or could lie, in tort because this claim is based on allegations of attorney misconduct or misrepresentation, which involve a special duty that could support a tort claim. This part of the declaratory judgment claim must be dismissed on remand.
- The employees' inverse condemnation claim does not lie, and could not lie, in tort.

¶ 57 As a result, the order is affirmed as to the employees' (1) claim that the trustees breached their fiduciary duties; (2) claim that the trustees violated the implied covenant of good faith and fair dealing; (3) claim that the colleges breached the implied covenant of good faith and fair dealing; and (4) inverse condemnation claim; and the case is remanded for further proceedings on those claims. The order is reversed as to the employees' (1) claim the colleges breached their fiduciary duties; and (2) claim that the employees' contributions to the trusts should be returned because of mutual or unilateral mistake, and on remand the probate court shall dismiss those claims.

Judge RUSSEL concurs.

Judge HAWTHORNE concurs in part and dissents in part.

Judge HAWTHORNE concurring in part and dissenting in part.

¶ 58 Because I believe that the employees' breach of fiduciary duty claim is barred by the CGIA, I respectfully dissent as to Part II.C.1.a. of the majority's opinion. And be-

cause I do not believe that the employees' unilateral and mutual mistake claims are barred by the CGIA, I respectfully dissent as to Part II.C.3. of the majority's opinion. I also dissent as to the majority's conclusions concerning these issues in Part III. However, I concur with the remainder of the opinion.

### I. Breach of Fiduciary Duty Claim

¶ 59 I would conclude that the CGIA bars the employees' breach of fiduciary duty claim because it could lie in tort. Unlike the majority, I am not persuaded that the economic loss rule has any bearing on whether the CGIA bars claims that could sound in tort.

¶ 60 Relying on Article IV, Section 4.4 of the CHEIBA trust, the employees maintain that the fiduciary duties owed to them by defendant colleges and defendant trustees arose from the contract. That provision, titled "Fiduciary Duties," provides, in relevant part,

> The Trust Committee shall act with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims ....

¶ 61 A trustee-beneficiary relationship imposes a similar fiduciary duty on the trustee as a matter of law. *See Bailey v. Allstate Ins. Co.*, 844 P.2d 1336, 1339 (Colo.App.1992) (the trustee-beneficiary relationship gives rise to fiduciary duties as a matter of law). "A fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *Moses v. Diocese of Colorado*, 863 P.2d 310, 321 (Colo.1993) (quoting Restatement (Second) of Torts § 874 cmt. a (1979)). A fiduciary's obligations to the beneficiary include a duty to exercise reasonable care and skill. *Destefano v. Grabrian*, 763 P.2d 275, 284 (Colo.1988); Restatement (Second) of Trusts § 174 (1959) ("The trustee is under a duty to the beneficiary in administering the trust to exercise such care and skill as a man of ordinary prudence would exercise in dealing with his own property ...."). Thus, a trustee's duty to exercise reasonable care, skill, and prudence under the circumstances exists, as a matter of law, by nature of the trustee-beneficiary relationship.

¶ 62 Breach of a fiduciary duty is an action that can lie in tort. *See* Restatement (Second) of Torts § 874 cmt. b ("A fiduciary who commits a breach of his duty as a fiduciary is guilty of tortious conduct to the person for whom he should act."); *Destefano*, 763 P.2d at 284 ("[One] standing in a fiduciary relation with another is subject to liability to the other for harm resulting from a breach of the duty imposed by the relationship." (citing Restatement (Second) of Torts § 874)); *Moses*, 863 P.2d at 319 (First Amendment does not grant religious organizations immunity from tort liability for breach of a fiduciary duty); *Western Fire Truck, Inc. v. Emergency One, Inc.*, 134 P.3d 570, 575 (Colo.App. 2006) (if jury found that agent was acting for principal, it properly found that agent owed principal a fiduciary duty and was liable in tort for breach of that duty); *Virdanco, Inc. v. MTS Int'l*, 820 P.2d 352, 354 (Colo.App. 1991) (breach of fiduciary duty claim was legal in nature and award of exemplary damages was appropriate because breach involved wanton and reckless conduct).

¶ 63 Here, the trustees owed the employees a fiduciary duty as a matter of law because of their trustee-beneficiary relationship. And they also had an explicit contractual duty to act as fiduciaries to the employees. Because the employees' fiduciary duty claim against the trustees could lie in tort or in contract, it is barred by the CGIA. *Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1004 (Colo.2008).

¶ 64 I do not believe that the economic loss rule has any bearing on whether the CGIA bars the employees' claims. Since adopting the economic loss rule, the Colorado Supreme Court has considered whether the CGIA bars claims that could arise in both contract and tort. In *Robinson v. Colorado State Lottery*, the court expressly acknowledged its seminal economic loss rule case, *Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256 (Colo.2000), and nonetheless held that in areas where there is overlap, "claims that could arise in both tort and contract are barred by the CGIA." 179 P.3d at 1004 ("In-

deed, certain common law tort claims that are expressly intended to remedy economic loss such as fraud or negligent misrepresentation can exist independent of or in conjunction with a contractual claim. Yet, these economic-loss claims sound in tort." (citation omitted)). Thus, the relevant consideration is whether the claims are or could be tort claims, not whether the economic loss rule prevents a plaintiff from successfully asserting potential tort claims. *See id.; City & County of Denver v. Desert Truck. Sales, Inc.,* 837 P.2d 759, 764 (Colo.1992) ("The dispositive question is whether the claim is a tort claim or *could be a tort claim* for purposes of analysis under the Governmental Immunity Act." (emphasis in original)).

¶ 65 The fact that the economic loss rule prevents the employees from successfully asserting a tort claim does not change the claim's fundamental nature. A fiduciary duty arises from the contract and an independent general duty of care. *See Colorado Dep't of Transp. v. Brown Group Retail, Inc.,* 182 P.3d 687, 690–91 (Colo.2008) ("lies in tort or could lie in tort" refers to the breach of a general duty of care, as distinguished from a breach of a contract or other agreement). Any claim that could lie in tort is barred by the CGIA, notwithstanding the economic loss rule's effect. *See Robinson,* 179 P.3d at 1004 (common law tort claims that can exist independent of or in conjunction with a contract claim sound in tort and are therefore barred by the CGIA); *see also Brown Group Retail,* 182 P.3d at 690–91 ("[W]e have never suggested that coverage of the [CGIA] is limited to claims that are capable of being recast as common-law torts by the party bringing the claim."). I would therefore conclude that the employees' breach of fiduciary duty claim is barred by the CGIA.

¶ 66 I recognize that, under my interpretation, when a public entity's fiduciary relationship with a contracting party exists as a matter of law, that party has no tort or

contract remedy for any claim that could be recast as a breach of a legally implied fiduciary duty. This result is troubling. In addition to leaving a party who contracts with the government without a remedy in certain instances, such a result does not further the Act's purpose of limiting governmental liability for compensatory money damages in tort cases.[1] *See* § 24–10–102, C.R.S.2011 ("the state and its political subdivisions provide essential public services and functions and ... unlimited liability could disrupt or make prohibitively expensive the provision of such essential public services and functions"); *see also City of Colorado Springs v. Conners,* 993 P.2d 1167, 1172 (Colo.2000). In cases such as this one, the government's liability would not be any greater than that which would arise in contract because the economic loss rule would prevent the employees from recovering in tort. Nonetheless, in my view, the CGIA and Colorado case law compel this result. *See Robinson,* 179 P.3d at 1004 (claims that could arise in both tort and contract are barred by the CGIA); *Brown Group Retail,* 182 P.3d at 690–91 (characterizing "lies in tort or could lie in tort" as an "expansive statutory phrase"); *see also* § 24–10–102 (General Assembly recognizes that "the doctrine of sovereign immunity ... is, in some instances, an inequitable doctrine").

## II. Unilateral and Mutual Mistake Claims

¶ 67 I would conclude that because the employees' unilateral and mutual mistake claims lie solely in contract, they are not barred by the CGIA.

¶ 68 The doctrine of mistake allows the mistaken party to avoid the contract. *Summerel v. Goodyear Tire & Rubber Co.,* 232 P.3d 128, 135 (Colo.App.2009); *see also Poly Trucking, Inc. v. Concentra Health Services, Inc.,* 93 P.3d 561, 563 (Colo.App.2004) (reformation is generally permitted when the parties made a mutual mistake or one party made a unilateral mistake and the other en-

---

**1.** The CGIA became effective July 1, 1972, well before Colorado adopted the economic loss rule in *Town of Alma v. AZCO Constr., Inc.,* 10 P.3d 1256 (Colo.2000). However, the General Assembly has not legislatively addressed the economic loss rule's effect on the CGIA even though it has

amended other CGIA provisions. *See Vigil v. Franklin,* 103 P.3d 322, 327 (Colo.2004) ("when it chooses to legislate in a particular area, the General Assembly is presumed to be aware of existing case law precedent.").

gaged in fraud or inequitable conduct). Mistake remedies, such as contract reformation and rescission, are equitable in nature. *Morris v. Belfor USA Group, Inc.*, 201 P.3d 1253, 1260 (Colo.App.2008) (reformation is an equitable remedy); *CAMAS Colorado, Inc. v. Board of County Com'rs*, 36 P.3d 135, 139 (Colo.App.2001) (rescission is an equitable remedy afforded upon a showing of mistake); *see also Maryland Cas. Co. v. Buckeye Gas Products Co.*, 797 P.2d 11, 13 (Colo.1990) (prerequisite to court's reformation power based on mutual mistake is a prior agreement representing the parties' actual agreement).

¶ 69 Unilateral mistake applies where one party is mistaken about a basic contractual assumption. *Sumerel*, 232 P.3d at 135.

¶ 70 Restatement (Second) of Contracts § 153 (1981) provides:

Where a mistake of one party at the time a contract was made as to a basic assumption on which he made the contract has a material effect on the agreed exchange of performances that is adverse to him, the contract is voidable by him if he does not bear the risk of the mistake ... and

(a) the effect of the mistake is such that enforcement of the contract would be unconscionable, or

(b) the other party had reason to know of the mistake or his fault caused the mistake.

¶ 71 A mutual mistake claim requires a showing that both parties were laboring under the same erroneous conception of the contract's terms and conditions. *Maryland Cas. Co.*, 797 P.2d at 13.

¶ 72 To support their unilateral and mutual mistake claims, the employees allege the following underlying facts. The attorney general, who is not a party to this appeal, purported to represent all the participating colleges in creating the CHEIBA trust, resulting in a conflict of interest. The participating colleges were entitled to independent counsel, a fact that the attorney general failed to disclose to the trust committee. Employees who had been required to contribute to the trust before June 30, 2003 were not represented during the actions

leading to the trust committee approving the CHEIBA trust. The trust committee was not advised that the CHEIBA trust could foreseeably cause the trustees to discriminate among the beneficiaries and violate their contractual duty to treat all trust beneficiaries equally. According to the employees, the attorney general inserted a waiver provision without the trust beneficiaries' and the trust committee's informed consent. The employees further allege that defendants, through their attorney, knew of Mesa State's mistake.

¶ 73 The employees maintain that the effect of the attorney general's conduct renders the CHEIBA trust provision authorizing a waiver and forfeiture of rights and trust contributions void for unilateral or mutual mistake. They seek a declaratory judgment voiding that provision, in Article X, section 10.1 of the CHEIBA trust, titled "Rights," which provides:

Neither any Employee or Participant, his family or dependents, any beneficiary, or any other person or group, nor their respective successors, assigns, or legal representatives, shall have any right, title or interest, vested or otherwise, in or to any assets of the Trust, whatsoever, or in or to the eligibility requirements for any Benefit Plan as changed or altered, except to the extent otherwise specifically provided for in this Agreement. Any participating Employee who withdraws or ceases to participate in the program does hereby and shall immediately and expressly waive and forfeit any right, title or interest in or to any assets of the Trust. Any benefits such Participant may have shall be forever terminated and discharged when this Agreement is terminated, the Trust dissolved or a Participant ceases to be eligible under the terms of any Benefit Plan, provided that Participant may extend benefits pursuant to benefit continuation laws (COBRA), insurance contract conversion rights and the terms and provisions of a Benefit Plan. No benefit right or interest of any such person shall be transferable or assignable by any Participant or other person to any other person or entity.

¶ 74 The employees also request an accounting to determine their reserve fund share and a declaratory judgment disbursing that share to a successor trustee.

¶ 75 In my view, the CGIA does not bar the employees' claims because the claims and requested relief are based in contract. *See CAMAS Colorado*, 36 P.3d at 139 (CGIA did not bar mutual mistake claim because the relief and the claim were based in contract).

¶ 76 Unlike the majority, I do not view the source of the duty owed by the attorney general to the trustees, or, by implication to the employees, as the relevant inquiry in determining whether the CGIA bars the employees' mistake claims against defendants. The employees do not allege that the trustees engaged in fraudulent concealment or negligently misrepresented a material fact, both of which are claims that are barred by the CGIA because they lie in tort. *Id.* at 138. Nor do they base their claims on the attorney general's possible legal malpractice or misrepresentation, as the majority perceives. Significantly, the attorney general is not a party, and proving legal malpractice is not required to support the mistake claims. The employees' complaint alleges that the attorney general misinformed Mesa State and defendants about their rights to counsel and failed to tell them that a waiver provision had been inserted in the CHEIBA trust agreement. Therefore, according to the complaint, such conduct "negated any valid consent to the amendment."

¶ 77 Thus, the claim asserts that because the attorney general misinformed, or did not inform, Mesa State or defendants about the waiver provision, one or more of them was laboring under an erroneous conception of the contract's terms. In my view, this is a claim that arises solely in contract.

¶ 78 The employees seek a declaratory judgment that the CHEIBA trust's provision authorizing a forfeiture of their contributions is null and void because of either unilateral or mutual mistake. These claims, if successful, could entitle them to rescission or reformation of the CHEIBA trust agreement to restore them to the position they would have been in under the disability trust agreement. *See Sumerel*, 232 P.3d at 135; *Poly Truck-*

*ing*, 93 P.3d at 563. Those remedies are equitable in nature. *Morris*, 201 P.3d at 1260; *CAMAS Colorado*, 36 P.3d at 139.

¶ 79 Because the mistake claims arise out of contract, not an alleged tortious act by defendants, and the relief is equitable in nature, I believe the CGIA does not bar either the employees' mutual or unilateral mistake claim. *See CAMAS Colorado*, 36 P.3d at 139.

### III. Conclusion

¶ 80 I would conclude that the CGIA bars the employees' fiduciary duty claims and would therefore reverse that portion of the district court's order. I would further conclude that the CGIA does not bar the employees' mistake claims and would affirm that portion of the order. In all other respects, I concur with the majority's conclusions.